RICHARD E. ALLEN *v.* WARDEN, COMMUNITY
CORRECTIONAL CENTER

SUPERIOR COURT  NEW HAVEN COUNTY  FILE No. 142149

WILLIAM H. BROCKENBERRY *v.* WARDEN, COMMUNITY
CORRECTIONAL CENTER

SUPERIOR COURT  NEW HAVEN COUNTY  FILE No. 142150

BENJAMIN C. LITTLE *v.* WARDEN, COMMUNITY
CORRECTIONAL CENTER

SUPERIOR COURT  NEW HAVEN COUNTY  FILE No. 142151

HUGH SUGGS *v.* WARDEN, COMMUNITY
CORRECTIONAL CENTER

SUPERIOR COURT  NEW HAVEN COUNTY  FILE No. 142152

JAMES WHITE, JR. *v.* WARDEN, COMMUNITY
CORRECTIONAL CENTER

SUPERIOR COURT  NEW HAVEN COUNTY  FILE No. 142153

JAMES WRIGHT *v.* WARDEN, COMMUNITY
CORRECTIONAL CENTER

SUPERIOR COURT  NEW HAVEN COUNTY  FILE No. 142154

Memorandum filed February 27, 1975

*Sue L. Wise,* of New Haven, for the plaintiffs.

*Robert E. Beach, Jr.,* office of chief state's attorney, for the defendant.

*Frank B. Cochran,* of Hartford, filed a brief as amicus curiae.

GRILLO, J.   These proceedings concern habeas corpus petitions of six individuals who were ordered incarcerated in the community correctional center by the Circuit Court because of their inability to pay fines which were imposed on the day they were ordered taken into custody.   While the primary fulcrum of the petitions relates to a claim of a violation of the equal protection clause of the fourteenth amendment to the constitution of the United States, as the defendant concedes in his brief, ancillary issues also evolved at the hearings held by this court, requiring in addition the determination whether the plaintiffs were accorded their rights under the due process clause of the fourteenth amendment.   The plaintiffs are entitled to amend their petitions to that effect.   Practice Book § 132; *Thibault* v. *Frechette,* 135 Conn. 170, 172.

The plaintiffs were committed to the correctional center under § 18-63[1] of the General Statutes and

[1] "Sec. 18-63.   COMMITMENT FOR FAILURE TO PAY FINE.   Upon any conviction for a crime, if the convict fails to pay any fine lawfully imposed, he shall be committed to a community correctional center until such fine is paid."

at the time of the hearings were "working off" their fines as provided by § 18-50.[2] In order that these cases might not be moot by the time this court acted on these petitions, the plaintiffs were released pending this decision.

The procedure followed by the Circuit Court (now the Court of Common Pleas; Public Acts 1974, No. 74-183), as explained by the chief clerk of that court, was as follows: The attorneys for the parties engaged in plea bargaining. A plea of guilty resulted. A fine was then imposed. However, the judgment ordering payment of a fine was immediately vacated. One to several weeks later the fine was reimposed, the lapse of time presumably being designed to give the accused an opportunity to obtain funds to meet the fine. In these six cases that procedure was adopted, but on the day sentences were pronounced, i.e. the day the judicial order for payment of the fines was made, the plaintiffs were unable to pay the fines, although some could have paid a part, and were ordered jailed. In fact and in law, the day the fines were "reimposed," to use the language of the sentencing judge, was the first and only day the plaintiffs were ordered to pay the fines, since " 'when an order or judgment is vacated the previously existing status is restored and the situation is the same as though the order or judgment had never been made.' " *Wrang* v. *Spencer,* 4 Conn. Cir. Ct. 473; 49 C.J.S., Judgments,

---

[2] "Sec. 18-50. CREDITS TOWARD FINE; COMPUTATION OF TIME; PAYMENT AFTER COMMITMENT. Each person committed to any community correctional center upon conviction of any criminal offense, and held therein only for the payment of a fine, shall be discharged when the time served by such person at the rate of three dollars a day amounts to such fine or the balance thereof remaining unpaid; but such a person shall earn an additional credit of two dollars toward such fine or balance of fine for each day he is employed at productive or maintenance work and has established a satisfactory work record. . . ."

§ 306. Thus on the day sentence was pronounced the plaintiffs had not flouted any previously declared order to pay the fines, the imposition of which had previously been vacated. The very day the plaintiffs were ordered to pay the fines was the day they were incarcerated.

That these plaintiffs were indigent at the time of their court appearances is crystal clear from the evidence elicited at the instant hearings. No inquiry was made by the sentencing court at any time as to the ability or plan of the plaintiffs to pay their fines on the day to which the cases were continued. (That, in effect, was the result of the vacating of the judgments on the initial court appearance—a continuance.) Nor was there any interrogation by the court on the sentencing day as to the family or economic circumstances of the plaintiffs. The evidence does not indicate any standard by which the length of the "continuance" was determined. There was obviously no relation between the amount of the fine and the time given via the "continuance" to obtain the money. In none of the cases was the accused given the opportunity of explaining his inability to pay the total amount of the fine, although in several cases credible intervening occurrences precluded payment. Indeed, in some instances an attempt by counsel or the accused to explain was cut off by the presiding judge. Had an inquiry been made either at the time the plaintiffs first appeared in court or at the later date when the effective fines were actually imposed, it would have been readily apparent that the plaintiffs could not pay the fines in toto. The interval of time did not change their financial status. When they first appeared in court they were impoverished—a condition which was in most cases further exacerbated in the intervening weeks because of intervening events. It is true that in at least two cases the court had been told that the accused prob-

ably could meet the fine on the future day of sentencing, but that hope was obviously predicated on rosy but unrealistic vaticination.

These plaintiffs are not defiant. They are not contumacious. They are not wilfully seeking to avoid payment of the fines. Nor are they negligently in default. Actually some of them had borrowed some money or had secured a job but did not have all the fine money available on the day they were sentenced. Nevertheless, on that day, without their being afforded an opportunity to explain their incapacity to meet the fines and without their being given a reasonable time within which to pay the fines, they were ordered jailed under § 18-63. They all would welcome the opportunity of paying their fines by instalment payments—a procedure proposed by the American Bar Association[3] and adopted by several states. *Tate* v. *Short,* 401 U.S. 395, 400 n.5.

While this court is reluctant to paint § 18-63 with the brush of unconstitutionality, it is concluded that, so far as these cases are concerned, the factual situ-

---

[3] ABA Minimum Standards for Criminal Justice Relating to Sentencing Alternatives and Procedures § 2.7 "[FINES] . . . (b) Whether to impose a fine in a particular case, its amount up to the authorized maximum, and the method of payment should remain within the discretion of the sentencing court. The court should be explicitly authorized to permit installment payments of any imposed fine, on conditions tailored to the means of the particular offender. (c) In determining whether to impose a fine and its amount, the court should consider: (i) the financial resources of the defendant and the burden that payment of a fine will impose, with due regard to his other obligations; (ii) the ability of the defendant to pay a fine on an installment basis or on other conditions to be fixed by the court; (iii) the extent to which payment of a fine will interfere with the ability of the defendant to make any ordered restitution . . . to the victim of the crime; and (iv) whether there are particular reasons which make a fine appropriate as a deterrent to the offense involved or appropriate as a corrective measure for the defendant." (Approved Draft, 1968.)

ation clearly demonstrates that the plaintiffs were not accorded their constitutional rights as guaranteed by the equal protection and due process clauses of the fourteenth amendment. While § 18-63 is non-discriminatory on its face, it is discriminatory in its operation with reference to these plaintiffs. As to them it worked an invidious discrimination because, solely because they are poor, they face incarceration. See *Williams* v. *Illinois,* 399 U.S. 235; *Tate* v. *Short,* 401 U.S. 395. This incarceration follows the only time that they were ordered to pay a fine. The effect of the procedure converted the nonpayment of the fine into an immediate jail sentence—a constitutionally defective judicial mechanism. *Tate* v. *Short,* supra. A statute may operate constitutionally under one set of circumstances but not under another. *Collins* v. *York,* 159 Conn. 150, 158.

The majority of these plaintiffs were jobless at their original appearance in court. Judicial notice is taken of the increasing rate of joblessness. Their ages range from sixteen to twenty-one years. Relatively speaking, they are uneducated, untrained, and unskilled. For some, their economic status, far from being ameliorated, worsened by the time they appeared for sentence when the fines were "reimposed." A cursory inquiry by the court would have elicited that fact. Even allowing for the few weeks' time given them to pay fines ranging from $125 to $750, to have expected these plaintiffs, who had no assets, or none of any significance, entirely to pay the fines flies in the face of reality. It could not reasonably be expected that they could accumulate the fine money during the interim period. Their incarceration was necessitated by their indigency.

In view of the observations above, the fact that a few weeks were allowed to elapse before the sentences were pronounced did not, ipso facto, under

the circumstances of these cases, cause the sentences to pass constitutional muster. The state elicited no proof that the plaintiffs had the capacity to pay the debt. As a matter of fact, in some cases an attempt of counsel or the accused to explain was abruptly terminated by the court. The defendant claims that the common-law right of allocution has never been recognized in Connecticut. *State* v. *Hoyt,* 47 Conn. 518, 542–46; *Brisson* v. *Warden,* 25 Conn. Sup. 202, 204. Nevertheless, if the sentencing judge had allowed the plaintiffs to explain their circumstances after an initial inquiry had been instituted by him, that method might well have eliminated the present complaint.

This court is not unmindful of the fact that these guilty pleas resulted from the plea bargaining process. It may also be asserted that, once that modus operandi has been pursued, the accused cannot raise claims relating to deprivation of constitutional rights which occurred prior to the guilty pleas. See *Tollett* v. *Henderson,* 411 U.S. 258, 273 (dissenting opinion). The constitutional infirmity of which the plaintiffs complain relates, however, to sentencing procedures occurring after the entry of the pleas.

The state contends that the negotiated plea resulted in a fine "payable" on an agreed date. There was no testimony at the hearing indicating that that was the fact. As a matter of fact, on the day the plaintiffs were jailed, the scanty transcripts indicate, the fines were "reimposed," supporting the testimony of the chief clerk, and indeed the declaration in the defendant's brief, that the judgments resulting from the initial imposition of the fines were vacated and the cases continued to a future date. The defendant claims an indigent accused is treated differently. He is given time to pay the fine.

Even if it is assumed that the plan adopted by the Circuit Court was a satisfactory alternative and eliminated the vice that *Tate* v. *Short,* 401 U.S. 395, found inherent in the application of the Texas statute and municipal ordinance, the record lacks any demonstration that the time allowed via continuances was a reasonable time period, as the defendant concedes it must be. A reasonable opportunity to discharge the fine must be given before the alternative of imprisonment is invoked. *Application of Collins,* 108 Ariz. 310. What constitutes a reasonable time depends entirely on the facts and circumstances relating to each of these plaintiffs. *In re Sternberg,* 300 F. 881, 884 (D. Conn.). "It is a period which is created because of some justifiable reason, and mere lapse of a particular period of time is not the standard or gauge by which a reasonable time may be measured, since time alone is not the determinable factor." 75 C.J.S. 636, "Reasonable." In the determination of what is a reasonable time, factors such as the difficulties surrounding and attending that to be accomplished must be considered, as must the means and ability of the persons involved. Ibid. The fact that an accused or his counsel acquiesced in the continuance of a case to a certain date cannot form a basis for a finding that the time was reasonable and that the accused could be expected to "raise" the anticipated fine during the short time allowed, since a reasonable time does not depend on mere opinion or expectation. Ibid. An inquiry by the Circuit Court to ascertain the circumstances surrounding the plaintiffs and the hardships confronting them would probably have satisfied that court, as it did this court, that it was highly improbable for these pauperized persons to meet fines ranging up to $750 within the "deadline" set. As articulately stated, "[w]ith the growing

awareness of guilty plea procedures, a judge is no longer 'a mechanical robot in handling pleas of guilty.' . . . It is not too much to require that, before sentencing defendants to imprisonment, judges take the few minutes necessary . . . to determine whether they understand the action they are taking." *State* v. *Anonymous* (1971-16), 6 Conn. Cir. Ct. 555, 559 (concurring opinion). The plan of the Circuit Court may be noble in its purposes and designed to comply with *Tate* v. *Short,* supra, but its proper implementation was lacking in these cases. To express it differently, in view of the impoverished status of these indigents, the method adopted merely postponed the day when the jail doors were to open, and the granting of the continuance did not soften the effect of the immediate payment order.

The defendant suggests that *Tate* v. *Short,* supra, is complied with, since payment was required only at the expiration of the "continuance" which followed the vacating of the judgments previously rendered so that immediate incarceration was not ordered. The flaw in this position is that there was no order outstanding during the period of continuance which required payment at a future date. The plaintiffs could not be and were not ordered incarcerated until they appeared in court for sentencing. Contrary to the defendant's contention that payment was "required" at the expiration of the continuance, the plaintiffs were under an obligation to pay the fine, not by virtue of any order of the judge granting the continuance, but as a result of the fine imposed by the sentencing judge, whose order for incarceration followed immediately after the imposition of the fine and the nonpayment thereof. In substance, the defendant seeks to accord a retroactive character to the order entered subsequent to the continuance.

The plaintiffs cannot pay because they are indigent, and their imprisonment, rather than aiding collection of revenue, saddles the state with the cost of feeding and housing them for the period of imprisonment. *Tate* v. *Short,* supra, 399. The state has not demonstrated that a compelling state interest is served by the continued confinement of the plaintiffs, thus providing a sufficient purpose for the prompt application of the statute. *Shapiro* v. *Thompson,* 394 U.S. 618.

On the day sentence was pronounced in all six cases these indigent plaintiffs, unable to pay the fines, were immediately ordered jailed under § 18-63 of the General Statutes. This action represented an unconstitutional application of the statute. The utilization of the statute automatically converted the fine into a jail term solely because the plaintiffs were indigent—a process inconsistent with rights accorded the plaintiffs under the equal protection clause of the fourteenth amendment. This is so since the punishment would be payment of a fine if they were able to pay it, but because they were indigent they were incarcerated. *Tate* v. *Short,* supra, 398. It is noted, parenthetically, that the scanty transcripts attached to the brief of the defendant indicate that the guilty pleas were perfunctorily accepted without application of the standards mandated by the United States Supreme Court in *Boykin* v. *Alabama,* 395 U.S. 238. See *State* v. *Bugbee,* 161 Conn. 531, 533. The Appellate Division of the Circuit Court had ordered the same standards to be applied in misdemeanor cases. *State* v. *Anonymous* (1971-16), 6 Conn. Cir. Ct. 555, 558.

In maintaining that these plaintiffs were afforded alternative means and that this satisfied the requirements of *Tate* v. *Short,* supra, the defendant, citing *State* v. *DeBonis,* 58 N.J. 182, contends that invid-

ious discrimination lies "not in the fact that a jail term replaced a fine, but in the denial to the defendant of a fair opportunity to raise the monies." Even if that proposition is assumed, however, the debility in the defendant's position is that there is nothing in the record indicating that these plaintiffs were given a fair opportunity to obtain hundreds of dollars in a few weeks. There was no standard to guide the judge in providing for that opportunity and in being assured that the opportunity was fair, since no inquiry was made into the plaintiffs' resources, their family background, their financial and job status, and all other factors necessary to arrive at a period of time calculated to give the plaintiffs a fair opportunity. In short, the record is bereft of any facts on which this court can predicate a conclusion that a "fair opportunity" to pay the fines was accorded these plaintiffs.

Another facet of the Circuit Court proceedings that colored them with the taint of unconstitutionality was the failure of three of the plaintiffs to be represented by counsel when they were sentenced. Indigent defendants' rights to be furnished counsel do not depend on a request for assistance of counsel. *Kitchens* v. *Smith,* 401 U.S. 847. The sentencing process is a critical stage of the criminal trial. *Consiglio* v. *Warden,* 153 Conn. 673, 676. An indigent defendant must have counsel, even when tried for a misdemeanor. *Argersinger* v. *Hamlin,* 407 U.S. 25.

It is recognized that the former Circuit Court was burdened with a soaring criminal docket. The indefatigable efforts of the court personnel to accelerate the disposition of the caseload are appreciated. The concern of the chief clerk that any different procedure to effect payment of fines would place an onerous bookkeeping burden on the court is acknowledged. Constitutional rights are, how-

ever, not to be subordinated to administrative convenience. This court also is cognizant of the fact that much court time would be necessary to make the inquiries suggested above, when the accused is indigent and a fine is to be imposed, to ascertain his financial circumstances, job or lack thereof, and family status. However, as succinctly stated by the Judicial Council of Connecticut, "the increased demand of the judicial system goes beyond a mere increase in numbers because the protection of constitutional rights and liberties of individual defendants involves . . . time consuming participation of the court." Conn. Judicial Council, 24th Rep., p. 26 (1974). Any curtailing of those rights with a view toward fitting them within the framework of expeditious and accelerated case management and disposition smacks of a Procrustean procedure violative of due process.

The following order is issued: The plaintiffs are to be released from custody unless forthwith they petition the sentencing court for a hearing and are granted that hearing for a determination by that court relative to their requests that they be given an appropriate time in accordance with this decision, within which to pay the fines imposed, by instalment payments or otherwise and under conditions imposed by that court. Their present release from custody is continued pending the decision by that court. It is assumed that the plaintiffs will be given credit for the time already served at the correctional center in the determination of the amount of the fines relative to which the plaintiffs are in default. This court will retain jurisdiction in these matters in the event that any question arises relating to any action taken by either the plaintiffs or the sentencing court.