PALMER GAINES *v.* JOHN R. MANSON
EDWARD KEISER, JR. *v.* JOHN R. MANSON
ALPHONZIE PERRY *v.* JOHN R. MANSON
LAWRENCE TAYLOR *v.* JOHN R. MANSON
DONALD WEST *v.* JOHN R. MANSON
WILLIE BRASWELL *v.* RAYMOND LOPES
DONALD DEFORGE *v.* RAYMOND LOPES
(12460)
(12461)
(12462)
(12463)
(12464)
(12465)
(12466)

PETERS, HEALEY, SHEA, GRILLO and DALY, Js.

 

Argued June 14—decision released September 11, 1984

*Shelley White,* with whom was *Martha Stone,* for the appellants (petitioners).

*Carl J. Schuman,* assistant state's attorney, with whom, on the brief, were *Austin J. McGuigan,* chief state's attorney, and *John Nazzaro,* legal intern, for the appellee (state).

*Timothy S. Fisher* filed a brief as amicus curiae.

PETERS, J. The principal issue in these consolidated cases is the extent of the petitioners' constitutional rights to timely prosecution of their appeals from their criminal convictions. Each petitioner, Palmer Gaines, Edward Keiser, Jr., Alphonzie Perry, Lawrence Taylor, Donald West, Willie Braswell and Donald DeForge, sought a writ of habeas corpus alleging that his continued incarceration was illegal because appeal of his state court conviction has been unreasonably and unjustifiably delayed by an overworked and overburdened public defender's office. The petitions claimed a violation of rights to due process, equal protection of the laws, and effective assistance of counsel, relying in each instance on relevant provisions of both the state and the federal constitutions. Conn. Const., art. I §§ 8, 10 and 20; U.S. Const., amend. XIV. The trial court dismissed the petitions and each petitioner, upon the granting of a joint petition for certification, has appealed. We find error.

The underlying facts have been stipulated. Each of the petitioners has been convicted of a felony and was incarcerated at the time of the filing of his petition. Each had filed a timely application for waiver of fees, costs and expenses and appointment of counsel on appeal, which, upon approval by the trial court, resulted in the appointment of the office of the chief public defender to represent the petitioner upon appeal. Each has encountered substantial delays in the processing of his appeal by the public defender's office. The ages of the pending appeals, at the time of the trial court hearing, ranged from about two years to about four and one-half years.[1]

---

[1] The petitioner Palmer Gaines was sentenced on April 21, 1981. A delayed appeal was filed on April 15, 1982. Although his appeal brief was due on October 2, 1982, none was filed until March 7, 1984. The state's brief had not been filed when this case was heard in this court on June 14, 1984. By that time the petitioner had, however, been released on parole.

The petitioner Edward Keiser, Jr., was sentenced on September 21, 1981. An appeal was filed on October 22, 1981. Although his appeal brief was

The office of the chief public defender is the agency created by the state of Connecticut to represent indigent defendants on appeal. It is obligated to accept all court appointments to represent indigent defendants. Within the public defender's office, a staff of five attorneys in the legal services section has responsibility for a rising caseload of appeals. These five attorneys have had obligations for criminal appeals, excluding habeas corpus petitions, in 81 cases in 1979, 94 cases in 1980, 126 cases in 1982 and 190 cases in 1983. In order to deal fairly with all of the section's clients, 90 percent of whom are incarcerated, the section has a policy of preparing appellate briefs in chronological order based on the date of sentencing. The state of Connecticut has

due on July 22, 1982, none had been filed by the time this case was heard in this court on June 14, 1984. The petitioner is currently serving concurrent sentences for convictions of other crimes.

The petitioner Alphonzie Perry was sentenced on July 25, 1981. A delayed appeal was filed on November 25, 1981. Although his appeal brief was due on April 8, 1982, none had been filed by the time this case was heard in this court on June 14, 1984. The petitioner is currently serving concurrent sentences for convictions of other crimes.

The petitioner Lawrence Taylor was sentenced on June 18, 1980. A delayed appeal was filed on November 27, 1981. Although his appeal brief was due on January 11, 1982, none had been filed by the time this case was heard in this court on June 14, 1984.

The petitioner Donald West was sentenced on June 3, 1980. A delayed appeal was filed on August 4, 1980. Although his appeal brief was due on September 18, 1980, none was filed until April 27, 1984, and the state's brief had not yet been filed by the time this case was heard in this court on June 14, 1984. The petitioner is currently serving concurrent sentences for convictions of other crimes.

The petitioner Willie Braswell was sentenced on May 4, 1979. A delayed appeal was filed on May 30, 1979. Although his appeal brief was due on October 18, 1979, none was filed until June 23, 1983. Because the state's brief was not filed until April 12, 1984, the criminal appeal was not heard in this court until May 2, 1984, almost five years after the date of sentencing.

The petitioner Donald DeForge was sentenced on November 10, 1980. A delayed appeal was filed on June 30, 1981. Although his appeal brief was due on October 30, 1981, none was filed until January 31, 1983. Because the state's brief was not filed until May 11, 1984, the criminal appeal was not heard in this court until June 6, 1984, more than three and one-half years from the date of sentencing.

failed to provide a sufficient number of public defenders to handle the appeals of indigent criminal defendants in a timely fashion.[2]

The trial court accepted as proven the stipulated facts about the substantial delays encountered by the petitioners in the determination of their appeals. Nonetheless, the court concluded that the petitioners had failed to establish a violation of their constitutional rights. They failed to establish a denial of due process, the court held, because they failed to prove, as *Barker* v. *Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), requires, either their meaningful assertion of their right to a speedy appeal or their prejudice from the passage of time. They failed to establish a denial of equal protection, the court found, because they did not prove that the delays attributable to their representation by public rather than by private counsel had in any way infringed upon the adequacy of their opportunity to present their claims for appellate review. Finally, they failed to establish a denial of effective assistance of appellate counsel, the court concluded, because the quality of their representation by the public defender's office was excellent and because they had failed to make a showing of prejudice attributable to the delays they were encountering. For these reasons, the trial court dismissed the petitions for habeas corpus.

[2] Similar understaffing in the appellate unit of the office of the chief state's attorney adds further delays, for similar reasons, to the disposition of criminal appeals. It has been the policy of the legal services section since at least 1977 not to oppose motions filed by the state's attorney's office seeking extensions of the time in which to file the state's response briefs, because legal services attorneys need to request extensions of time to file the briefs of appellants, and they rely on the state's attorney's office not to oppose such motions. Concern about possible retaliation has also led the legal services sections not to file motions to set aside judgment pursuant to Practice Book § 3109 when the state's attorney's office has failed to file a timely response brief.

On their appeal, the petitioners assign as error each of these rulings on their constitutional claims. In addition, the petitioners claim that the trial court erred in failing to consider whether the petitioners were entitled to a remedy other than reversal of their convictions and discharge from custody. Because we agree with this final claim, we hold that the trial court erred in dismissing the writs of all of the petitioners except Braswell and DeForge, whose cases have become moot by virtue of the hearing of their appeals.[3] *Accurate Forging Corporation* v. *U.A.W. Local No. 1017,* 189 Conn. 24, 26, 453 A.2d 769 (1983); *Waterbury Hospital* v. *Connecticut Health Care Associates,* 186 Conn. 247, 249, 440 A.2d 310 (1982).

I

Assessment of the petitioners' remedial rights must begin with an overview of their substantive claims. These claims, constitutional in nature, are derived from their statutory right of appeal. General Statutes § 54-95.[4] Although there is no constitutional right of appeal; *Abney* v. *United States,* 431 U.S. 651, 656, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977); the right to appeal, once granted, invokes so significant a protection of liberty that it must be made available to all persons convicted of crimes. *Ross* v. *Moffitt,* 417 U.S. 600, 607, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974); *Coppedge* v. *United States,* 369 U.S. 438, 441, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962); *Nance* v. *United States,* 422 F.2d 590, 592 (7th Cir. 1970). "In the exercise of such a right, invidious discriminations, such as between rich and poor,

---

[3] Petitioner Braswell's appeal was heard in this court on May 2, 1984. Petitioner DeForge's appeal was heard in this court on June 6, 1984.

[4] General Statutes § 54-95 provides in relevant part: "APPEAL BY DEFENDANT IN CRIMINAL PROSECUTION; STAY OF EXECUTION. (a) Any defendant in a criminal prosecution, aggrieved by any decision of the superior court, upon the trial thereof, or by any error apparent upon the record of such prosecution, may be relieved by appeal, petition for a new trial or writ of error, in the same manner and with the same effect as in civil actions."

implicate constitutional guaranties of due process and equal protection of the laws. *Douglas* v. *California,* 372 U.S. 353, 355, 83 S. Ct. 814, 9 L. Ed. 2d 811, reh. denied, 373 U.S. 905, 83 S. Ct. 1288, 10 L. Ed. 2d 200 (1963); *Griffin* v. *Illinois,* 351 U.S. 12, 18, 76 S. Ct. 585, 100 L. Ed. 891 (1956) [; *Allen* v. *Warden,* 31 Conn. Sup. 459, 463–64, 334 A.2d 488 (1975)]. Since the state has established an appellate forum, 'these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts.' *Rinaldi* v. *Yeager,* 384 U.S. 305, 310, 86 S. Ct. 1497, 16 L. Ed. 2d 577 (1966); see *Blackledge* v. *Perry,* 417 U.S. 21, 25, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974); *Chaffin* v. *Stynchcombe,* 412 U.S. 17, 24 n.11, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973)." *D'Amico* v. *Manson,* 193 Conn. 144, 147, 476 A.2d 543 (1984); *State* v. *Files,* 183 Conn. 586, 588–89, 441 A.2d 27 (1981); *Staton* v. *Warden,* 175 Conn. 328, 333–34, 398 A.2d 1176 (1978).

The petitioners correctly relied on writs of habeas corpus to raise their constitutional claims. Although collateral attacks on criminal judgments are generally disfavored, the writ of habeas corpus "holds an honored position in our jurisprudence . . . [as] a bulwark against convictions that violate 'fundamental fairness.' " *Engle* v. *Isaac,* 456 U.S. 107, 126, 102 S. Ct. 1558, 71 L. Ed. 2d 783, reh. denied, 456 U.S. 1001, 102 S. Ct. 2286, 73 L. Ed. 2d 1296, and reh. denied, 457 U.S. 1141, 102 S. Ct. 2976, 73 L. Ed. 2d 1361 (1982); *Hammond* v. *Lenfest,* 398 F.2d 705, 710–11 (2d Cir. 1968).

In the adjudication of petitions for habeas corpus, the remedies available to a court depend upon the constitutional rights that are being vindicated. When the issue is denial of a right to a speedy trial under article first, § 8, of the Connecticut constitution, or amendments six and fourteen to the United States constitution, the petitioner who proves his claim is entitled to the extreme

remedy of dismissal of the criminal charges against him. Practice Book § 815 (7);[5] General Statutes § 54-82d;[6] *Strunk* v. *United States*, 412 U.S. 434, 438–40, 93 S. Ct. 2260, 37 L. Ed. 2d 56 (1973); *McCarthy* v. *Manson*, 554 F. Sup. 1275, 1278 (D. Conn. 1982), aff'd, 714 F.2d 234 (2d Cir. 1983); *State* v. *McCarthy*, 179 Conn. 1, 9, 425 A.2d 924 (1979). When the issue is appellate delay, which invokes the constitutional guaranties of due process and equal protection,[7] a trial court's choice of remedies is not so constrained. Proof of unconstitutional impairment of the right to appeal empowers a court to

---

[5] "[Practice Book] Sec. 815 — [MOTION TO DISMISS] MATTERS TO BE RAISED. The following, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the indictment or information: . . . (7) Defenses or objections based on the claim that the defendant has been denied a speedy trial . . . ."

[6] "[General Statutes] Sec. 54-82d. (Formerly Sec. 54-140). DISMISSAL OF CHARGES ON FAILURE TO GRANT PRISONER SPEEDY TRIAL. If an action is not assigned for trial within the period of time as provided in section 54-82c, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment or information be of any further force or effect, and the court shall enter an order dismissing the same."

[7] It is now generally agreed that claims of appellate delay arise under the constitutional guaranties of due process and equal protection rather than under the speedy trial guarantee of the sixth amendment and its state constitutional analogues. *Harrison* v. *United States*, 392 U.S. 219, 221 n.4, 88 S. Ct. 2008, 20 L. Ed. 2d 1047 (1968); *Layne* v. *Gunter*, 559 F.2d 850, 851 (1st Cir. 1977), cert. denied, 434 U.S. 1038, 98 S. Ct. 776, 54 L. Ed. 2d 787 (1978); *United States* v. *Cifarelli*, 401 F.2d 512, 514 (2d Cir.), cert. denied, 393 U.S. 987, 89 S. Ct. 465, 21 L. Ed. 2d 448 (1968); *Rheuark* v. *Shaw*, 477 F. Sup. 897, 908 (N.D. Tex. 1979), aff'd, 628 F.2d 297 (5th Cir. 1980), cert. denied sub nom. *Rheuark* v. *Dallas County*, 450 U.S. 931, 101 S. Ct. 1392, 67 L. Ed. 2d 365 (1981); *State* v. *Chapple*, 135 Ariz. 281, 298–99, 660 P.2d 1208 (1983); *United States* v. *Alston*, 412 A.2d 351, 356–57 (D.C. 1980); *People* v. *Carnes*, 30 Ill. App. 3d 1030, 1032–33, 332 N.E.2d 674 (1975); *Gajdos* v. *State*, 462 N.E.2d 1017 (Ind. 1984); *State* v. *Johnson*, 363 So. 2d 458, 460 (La. 1978); *Williams, petitioner*, 378 Mass. 623, 625–27, 393 N.E.2d 353 (1979); *State ex rel. Mastrian* v. *Tahash*, 277 Minn. 309, 311–12, 152 N.W.2d 786 (1967); *State* v. *Crabtree*, 625 S.W.2d 670, 673 (Mo. App. 1981); *State* v. *Lagerquist*, 254 S.C. 501, 505, 176 S.E.2d 141 (1970), cert. denied, 401 U.S. 937, 91 S. Ct. 912, 28 L. Ed. 2d 216 (1971); *Colunga* v. *State*, 527 S.W.2d 285, 288–89 (Tex. Crim. App. 1975); contra *People of Territory of Guam* v. *Olsen*, 462 F. Sup. 608, 613 (D. Guam 1978).

fashion an order conditionally discharging the petitioner or otherwise fashioning the appropriate relief, short of immediate release, to which the petitioner may be entitled. In such a case, the court is "not confronted with the dilemma . . . of having to choose between ordering an absolute discharge of the prisoner and denying him all relief." *Dowd* v. *United States ex rel. Cook,* 340 U.S. 206, 209–10, 71 S. Ct. 262, 95 L. Ed. 215 (1951). Under the identical language of the federal and state habeas corpus statutes, 28 U.S.C. § 2243[8] and General Statutes § 52-470,[9] the court has power, in any

[8] 28 U.S.C. § 2243 (1982) provides as follows: "ISSUANCE OF WRIT; RETURN; HEARING; DECISION. A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

"The writ, or order to show cause shall be directed to the person having custody of the person detained. It shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed.

"The person to whom the writ or order is directed shall make a return certifying the true cause of the detention.

"When the writ or order is returned a day shall be set for hearing, not more than five days after the return unless for good cause additional time is allowed.

"Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained.

"The applicant or the person detained may, under oath, deny any of the facts set forth in the return or allege any other material facts.

"The return and all suggestions made against it may be amended, by leave of court, before or after being filed.

"The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."

[9] "[General Statutes] Sec. 52-470. SUMMARY DISPOSAL OF THE CASE. APPEAL BY PERSON CONVICTED OF CRIME. (a) The court or judge hearing any habeas corpus shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments therein, and inquire fully into the cause of imprisonment, and shall thereupon dispose of the case as law and justice require.

"(b) No appeal from the judgment rendered in a habeas corpus proceeding brought in order to obtain his release by or in behalf of one who has been convicted of crime may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was

habeas corpus proceeding, to dispose of the case "as law and justice require." *Fredericks* v. *Reincke,* 152 Conn. 501, 506–507, 208 A.2d 756 (1965). See also *Williams, petitioner,* 378 Mass. 623, 627–28, 393 N.E.2d 353 (1979).[10]

In accordance with these well established principles, each of the petitioners in the cases now before us sought two forms of relief, an order that the petitioner be "immediately released" and an order for "such other and further relief as justice requires." In their post-trial and their reply briefs, the petitioners emphasized their claim to an immediate discharge as the appropriate relief for the constitutional violations they alleged they had suffered. They also, however, called to the attention of the trial court its authority to order whatever relief "law and justice require," under § 52-470, and to appoint a special public defender "in an appropriate case." General Statutes § 51-293 (a) (2).[11]

In these circumstances, we agree with the petitioners that the violations of their rights of due process and

---

tried or a judge of the supreme court to certify that a question is involved in the decision which ought to be reviewed by the supreme court and the judge so certifies."

[10] A number of federal courts have accordingly concluded that appellate delay warrants collateral review of the merits of state court convictions without regard to exhaustion of state remedies. See, e.g., *Shelton* v. *Heard,* 696 F.2d 1127, 1128–29 (5th Cir. 1983); *Tramel* v. *Idaho,* 459 F.2d 57, 58 (10th Cir. 1972); *Odsen* v. *Moore,* 445 F.2d 806, 806–807 (1st Cir. 1971); contra *Ralls* v. *Manson,* 503 F.2d 491, 493–94 (2d Cir. 1974).

[11] General Statutes § 51-293 (a) (2) provides as follows: "Sec. 51-293. PUBLIC DEFENDERS, ASSISTANTS AND DEPUTIES; APPOINTMENT, TERMS, QUALIFICATIONS, SUSPENSION, REMOVAL, SALARIES. SPECIAL ASSISTANT PUBLIC DEFENDERS. (a) . . . (2) This section shall not prevent a judge of the superior court from appointing a special assistant public defender on a contractual basis for a temporary period of time in an appropriate case, the expenses and compensation of which shall be paid from the budget of the public defender services commission and in accordance with the rates of compensation approved by the commission pursuant to subsection (1) of section 51-291. Whenever possible, any such appointment shall be made from a list of attorneys provided by the commission and submitted to the

equal protection must be considered in light of remedial alternatives other than immediate discharge. While the trial court was correct in its conclusion that the petitioners have not proven their claims for immediate and unconditional release, that conclusion does not counsel dismissal of the petitions for habeas corpus if the petitioners can establish a right to such other forms of relief "as law and justice require." Although as a general rule we distinguish analytically between rights and remedies, the kinds of issues that arise because of impairment of the right to appeal lend themselves to an accommodation between rights and remedies. As Professor Amsterdam has noted, the institutional failings that give rise to constitutional claims of unfair delay in the criminal process warrant a search for remedies other than "the drastic and unsatisfactory sanction of dismissal." Amsterdam, "Speedy Criminal Trial: Rights and Remedies," 27 Stan. L. Rev. 525, 536 (1975). We ourselves in *State* v. *Files,* supra, 589–91, after having found unreasonable delay by the state in defending against a criminal appeal, ordered that the defendant be afforded a new trial rather than a dismissal of the charges against him. Other courts confronting constitutional issues resulting from appellate delay have similarly considered the propriety of remedies other than outright release. See, e.g., *Roque* v. *People of Puerto Rico,* 558 F.2d 606, 607 (1st Cir. 1976); *Williams, petitioner,* supra, 628.[12] The trial court should have done so here.

---

court by the office of the chief public defender. Subsequent to his appointment as a special assistant public defender, an attorney may not solicit or accept from or on behalf of his client any money or article of value of any kind either as a fee for services performed or to be performed or as payment for costs or expenses incurred or to be incurred. . . ."

[12] Such a congruence of rights and remedies, while unusual, is certainly not unparalleled in the annals of the criminal law. For example, the action of a trial judge in setting aside a jury's verdict of guilty is governed by standards which vary with whether the remedy sought is a judgment of acquittal or a new trial. On a motion for a judgment of acquittal, the court

## II

The petitioners' constitutional claims require us to balance the competing interests of the state in the finality of a criminal conviction and of the petitioners in their fair and timely access to appellate review. The parties have urged the trial court, and us, to balance these interests by reference to the test established in *Barker* v. *Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), as we did in *State* v. *Files,* 183 Conn. 586, 589, 441 A.2d 27 (1981). See also *Rheuark* v. *Shaw,* 628 F.2d 297, 303 (5th Cir. 1980), cert. denied sub nom. *Rheuark* v. *Dallas County,* 450 U.S. 931, 101 S. Ct. 1392, 67 L. Ed. 2d 365 (1981). That test requires a consideration of four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendent." *Barker* v. *Wingo,* supra, 530. The trial court held that the petitioners had not satisfied this test. We disagree.

The delays in the preparation of appeal briefs for these petitioners have extended from two years to four and one-half years. The state concedes, as the trial court impliedly found, that such delays are sufficient to trigger further inquiry into the relevant *Barker* factors.

The reason for the delays encountered by the petitioners is the failure of the state to provide a sufficient

---

must view the evidence with a view to sustaining the jury's verdict and must deny relief if the evidence was sufficient to establish guilt beyond a reasonable doubt. Practice Book § 899; *State* v. *Gabriel,* 192 Conn. 405, 421, 473 A.2d 300 (1984); *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). On a motion for a new trial, however, the court has discretion to weigh the evidence and to consider the credibility of witnesses to determine whether "the interests of justice" require the granting of relief. Practice Book § 902; General Statutes § 52-270; *Johnson* v. *State,* 172 Conn. 16, 17, 372 A.2d 138 (1976); *State* v. *Grimes,* 154 Conn. 314, 324–25, 228 A.2d 141 (1966). See 3 Wright, Federal Practice and Procedure, Criminal 2d § 553 (1982).

number of appellate public defenders and state's attorneys to insure that the appeals of indigent criminal defendants are handled in a timely fashion. The parties so stipulated and the trial court expressly so found. The parties disagree only about the inferences that are to be drawn from the nature of this reason. The state maintains that the reason operates as an entirely neutral factor in the ultimate balancing process, while the petitioners argue that institutional delays must be weighed heavily against the state.

The petitioners' assertion of their rights has been limited to one query, by petitioner Taylor, inquiring about the status of his appeal. No evidence was introduced at the trial of any other effort by any of the petitioners to bring pressure upon his appellate counsel in the public defender's office to expedite his appeal. The petitioners respond to the sparsity of this record by noting that ordinarily it is the claimant's counsel who pursues, on behalf of his client, the assertion that the inaction of others is prejudicing the client. That model does not fit these cases. The petitioners have been handicapped in asserting rights through their counsel when it is the counsel itself that has been the source of the challenged delays. Further, complaints directed to their counsel would have been unavailing in light of the unchallenged stipulated facts concerning the policies under which the legal services section operates. These policies include the preparation of briefs in an order dictated by the date of the appellant's sentencing, and the deliberate failure to object to delayed response briefs by the state for fear of reprisal. These institutional factors, the petitioners argue, excuse their failure to take steps other than the filing of their present petitions. The state disagrees, and argues, as the trial court held, that the petitioners' inaction manifests their acquiescence in the delays that have occurred, and undermines their present constitutional claims.

The extent to which the delays actually prejudiced the petitioners is the *Barker* v. *Wingo* factor which is most in dispute. The trial court analyzed this factor in terms of three components identified in *Rheuark* v. *Shaw,* supra, 303 n.8, as: "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired."

The trial court relied heavily on its finding that the petitioners had failed to prove prejudice in any of these respects for its conclusion that no constitutional violation had been established. It dealt with the component of oppressive incarceration by noting that three of the seven petitioners were serving sentences for other convictions. As to these petitioners, the court held that the effect of the delayed appeals on the condition of their incarceration or on their eligibility for parole was speculative. For all the petitioners, it determined that the other components had not been proven in the absence of specific evidence of abnormal anxiety or impairment of legal claims.

It is true that this is not an overwhelming record of actual prejudice. The trial court failed, however, to address the greater likelihood of prejudice to those four petitioners whose incarceration results solely from a conviction whose appeal has been delayed. As to each of the petitioners so situated, we agree with the observation of the Supreme Judicial Court of Massachusetts that "delay may work an irremediable unjust loss of liberty in case his conviction is finally overthrown; and for any appellant, even one not in custody, delay may entail anxiety, forfeiture of opportunity, and damage to reputation, among other conceivable injuries. It is not a satisfactory answer to such hardships that the

presumption of innocence will have been abraded by the fact of the initial conviction from which the appeal is being taken. See *Rivera* v. *Concepcion,* [469 F.2d 17], 19 [1st Cir. 1972]. To be considered, too, is the interest of the legal system and the society at large in the expedition of appeals, especially criminal appeals.'' *Williams, petitioner,* 378 Mass. 623, 626, 393 N.E.2d 353 (1979).

The trial court's balancing of the *Barker* v. *Wingo* factors in these cases failed to take into account all of the constitutional implications for a fair legal system that the cases present. As a general rule, it may well be appropriate to attach special weight in the *Barker* v. *Wingo* matrix to the absence of demonstrated prejudice, particularly when the relief that is sought is dismissal of all outstanding criminal charges. Nonetheless, in the final analysis, the role of prejudice must depend upon the entire context in which the claim for relief is presented. In *State* v. *Files,* supra, 588–91, we ordered the defendant to be retried, but not acquitted, when prosecutorial failure to comply with appellate rules of procedure delayed the defendant's appeal. In those circumstances, we held that prejudice could be presumed from the fact of incarceration and from the possibility of impaired access to legal defenses. The present cases resemble *State* v. *Files* because they too present two reasons for departure from the customary emphasis on a showing of actual prejudice: the possibility of recourse to remedies less drastic than dismissal, and the conjunction of due process and equal protection claims.

We have already discussed the remedial posture in which these cases arise. It is important now to recognize that the cases pose questions of first impression because, in contradistinction to other cases that have applied the *Barker* v. *Wingo* test to appellate delays, these petitioners have claims that arise not only under

their state and federal rights to due process,[13] but also under their constitutional rights to equal protection.[14]

That the facts of these cases implicate the petitioners' rights to equal protection is undeniable. The protracted delays which they have suffered, caused as they are by the understaffing and overwork of the public defender's office, can affect only those criminal defendants who are indigent. No matter how clear their claims of trial error, no matter how injurious their mistaken convictions may be, they have no chance to have their appeal briefs prepared and their appellate arguments presented until they reach the top of an inexorable and slow-moving assignment list. By contrast, criminal defendants who have the financial ability to engage private counsel have the opportunity to have briefs filed on their behalf in a period of six months or less.

The trial court held that these facts, although undisputed, did not suffice to prove that the petitioners had been deprived of their constitutional rights to equal protection. In the view of the trial court, and the state on this appeal, whatever disadvantages the petitioners suffered because of the delays caused by the overworked and understaffed public defender's office were more than offset by the high calibre of the legal services that the office provides. Although we agree that our criminal justice system is fortunate to have obtained the services of counsel as skilled and dedicated as those

[13] Conn. Const., art. I § 8, provides in part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

U.S. Const., amend. XIV § 1, provides in part: "No State shall . . . deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[14] Conn. Const., art. I § 20, provides as follows: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin or sex."

See footnote 13, supra, for the text of U.S. Const., amend. XIV.

who serve in the public defender's office, we cannot accept this line of reasoning. Even if the impact of the disparity in the promptness of access to appellate review may be mitigated by the excellence of the services rendered, we hold that no such tradeoff can overcome an impairment of access which is as marked as these petitions manifest. The difference between four years and six months reflects a disparity in opportunity of access to the appellate forum that is constitutionally impermissible. See *Little* v. *Streater,* 452 U.S. 1, 17, 101 S. Ct. 2202, 68 L. Ed. 2d 627 (1981); *Douglas* v. *California,* 372 U.S. 353, 354–58, 83 S. Ct. 814, 9 L. Ed. 2d 811, reh. denied, 373 U.S. 905, 83 S. Ct. 1288, 10 L. Ed. 2d 200 (1963); *Griffin* v. *Illinois,* 351 U.S. 12, 19, 76 S. Ct. 585, 100 L. Ed. 891 (1956); *Cleaver* v. *Bordenkircher,* 634 F.2d 1010, 1012 (6th Cir. 1980); *Moscone* v. *Manson,* 185 Conn. 124, 130, 440 A.2d 848 (1981).

Because these petitioners have constitutional claims that combine aspects of rights to due process and to equal protection; see *Ross* v. *Moffitt,* 417 U.S. 600, 608–609, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974); their claims for relief are uniquely compelling even without a specific showing of actual prejudice. Their cases differ significantly from those in other jurisdictions, principally involving delays in the delivery of transcripts, in which claims for relief for appellate delays have been denied. See, e.g., *United States* v. *Pratt,* 645 F.2d 89, 91 (1st Cir. 1981); *Rheuark* v. *Shaw,* 628 F.2d 297, 302–304 (5th Cir. 1980), cert. denied sub nom. *Rheuark* v. *Dallas County,* 450 U.S. 931, 101 S. Ct. 1392, 67 L. Ed. 2d 365 (1981); *United States* v. *Cifarelli,* 401 F.2d 512, 513–14 (2d Cir.), cert. denied, 393 U.S. 987, 89 S. Ct. 465, 21 L. Ed. 2d 448 (1968); *State* v. *Chapple,* 135 Ariz. 281, 299, 660 P.2d 1208 (1983); *United States* v. *Alston,* 412 A.2d 351, 358–62 (D.C. App. 1980); *Gajdos* v. *State,* 462 N.E.2d 1017, 1023 (Ind. 1984);

*Williams, petitioner,* 378 Mass. 623, ·627–28, 393 N.E.2d 353 (1979); *State ex rel. Mastrian* v. *Tahash,* 277 Minn. 309, 311–13, 152 N.W.2d 786 (1967); *State* v. *Crabtree,* 625 S.W.2d 670, 674–75 (Mo. App. 1981); *State* v. *Lagerquist,* 254 S.C. 501, 504–505, 176 S.E.2d 141 (1970), cert. denied, 401 U.S. 937, 91 S. Ct. 912, 28 L. Ed. 2d 216 (1971); *Zanders* v. *State,* 515 S.W.2d 907, 909 (Tex. Crim. App. 1974). In those cases, the claimants not only were seeking dismissal of criminal charges but were aggrieved by failures which were individual rather than systemic and which the claimants, armed with counsel, had some real capacity to affect. Most important, those claimants, although injured by the delays which they had encountered, had not been singled out for unfavorable treatment because they were poor. The cases presently before us are dramatically different in every salient respect. For those petitioners, the infringement of their due process and equal protection rights requires remedial attention. See *Cleaver* v. *Bordenkircher,* supra, 1012.

We therefore hold that in applying the *Barker* v. *Wingo* test in the context of institutionally engendered appellate delays, a court is obligated to balance the relevant factors so as to take into account the remedial alternatives that are available as well as the constitutional rights that have been implicated. In the present cases, we conclude that the petitioners have clearly established that they have suffered extensive delays due to the understaffing of the public defender's office. These delays are beyond the petitioners' power to remedy, and discriminate against the petitioners because of their poverty. The petitioners have further demonstrated, albeit to a lesser degree, that their failure to assert their rights earlier was excusable and that they are presumptively prejudiced by their continued incarceration and the postponed resolution of their appeals. In combination, these facts are sufficient, under *Barker*

v. *Wingo,* to trigger an inquiry into such relief "as law and justice may require," unless the state can rebut the presumption of prejudice on remand.[15]

We recognize that when this case was presented in the trial court, the petitioners did not conspicuously advance the line of reasoning that we now find to be persuasive. Nonetheless, as in criminal appeals that are governed by the guidelines established in *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), these petitioners have a right to be heard when their claims implicate fundamental constitutional rights, especially when those claims arise in a context that is novel. We therefore hold that the trial court was in error when it dismissed all of the petitions for writs of habeas corpus. These cases must be remanded to the trial court to afford the state an opportunity to rebut the presumption of prejudice and, if that rebuttal is unpersuasive, to fashion whatever relief, short of unconditional discharge, the trial court may determine to be appropriate.[16]

In the exercise of its power under § 52-470 to grant such relief "as law and justice require," the trial court, much like a court of equity, has considerable discretion to frame a remedy, so long as that remedy is commensurate with the scope of the constitutional violations which have been established. See, e.g., *Milliken* v. *Bradley,* 433 U.S. 267, 279–81, 97 S. Ct. 2749, 53 L. Ed. 2d 745 (1977); *Todaro* v. *Ward,* 565 F.2d 48, 54 n.7 (2d Cir. 1977); *Rhem* v. *Malcolm,* 507 F.2d 333,

[15] Although our decision relies in part on rights to due process and equal protection under the United States constitution, it has an independent basis in the due process and equal protection provisions of article first, §§ 8 and 20, of the Connecticut constitution. See *Michigan* v. *Long,* 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983); *State* v. *Cohane,* 193 Conn. 474, 498 n.19, 479 A.2d 763 (1984); *State* v. *Ferrell,* 191 Conn. 37, 45 n.12, 463 A.2d 573 (1983).

[16] In light of this disposition of the petitioners' cases, we decline to consider their other claims of error.

340–41 (2d Cir. 1974). The parties should be afforded the opportunity to offer suggestions for an appropriate remedial order.[17] Without intending any limitation of the relevant choices, we believe the trial court should consider entering conditional orders of discharge under which the petitioners would be released unless, within a designated period of time, their appeal briefs were completed by the public defender's office or reassigned to a special public defender. See General Statutes § 51-293 (a) (2) and *Fredericks* v. *Reincke,* 152 Conn. 501, 506–507, 208 A.2d 756 (1965). Alternatively, the trial court may consider releasing on bail those not serving other sentences. This is a remedy that other jurisdictions have invoked for petitioners whose appeals were unduly delayed. See *Roque* v. *People of Puerto Rico,* 558 F.2d 606, 607 (1st Cir. 1976); *Rivera* v. *Concepcion,* 469 F.2d 17, 19 (1st Cir. 1972) and compare *Williams, petitioner,* supra, 628. Just as the judiciary has inherent power to remedy unconstitutional delays in the disposition of civil jury cases; see *Pellegrino* v. *O'Neill,* 193 Conn. 670, 480 A.2d 476 (1984); so too there is inherent power to remedy unconstitutional delays in criminal appeals by admitting petitioners for habeas corpus to bail. *Winnick* v. *Reilly,* 100 Conn. 291, 297, 123 A. 440 (1924); *Cinque* v. *Boyd,* 99 Conn. 70, 92, 121 A. 678 (1923); *Rose* v. *Nickeson,* 29 Conn. Sup. 81, 82-83, 271 A.2d 855 (1970). In the trial court's choice among these or other possible remedies, the decisive factor must be the vindication of the petitioners' constitutional rights.[18]

---

[17] At that time the trial court will have to consider whether the claims of any of the other petitioners have become moot.

[18] It is to state the obvious to note that in the fashioning of a remedy for the violation of constitutional rights, fiscal consequences should not play the dominant role. "Inadequate resources no longer can excuse the denial of constitutional rights." *Todaro* v. *Ward,* 565 F.2d 48, 54 n.8 (2d Cir. 1977); *Milliken* v. *Bradley,* 433 U.S. 267, 289-90, 97 S. Ct. 2749, 53 L. Ed. 2d 745 (1977); *Ruiz* v. *Estelle,* 679 F.2d 1115, 1146–47 (5th Cir. 1982), cert. denied, 460 U.S. 1042, 103 S. Ct. 1438, 75 L. Ed. 2d 795 (1983); *Finney* v. *Arkansas Board of Correction,* 505 F.2d 194, 201 (8th Cir. 1974).

There is error, the judgments in Nos. 12460 through 12464 are set aside and the cases are remanded to the trial court for further proceedings in accordance with this opinion; in Nos. 12465 and 12466 the appeals are dismissed as moot.

In this opinion the other judges concurred.