[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By his petition filed May 17, 2000, petitioner seeks a writ of habeas corpus, claiming that he is illegally confined by respondents. For reasons hereinafter stated, the petition is dismissed.
The facts underlying petitioner's claim are not greatly in dispute and it is found that on August 7, 1995, petitioner shot his wife's lover. He was taken into custody on that date and has been confined ever since. On September 19, 1997, petitioner entered a plea of guilty to assault in the first degree in violation of General Statutes § 53a-59 (a)(1). On December 12, 1997, a sentence of 18 years execution suspended after ten years with probation to follow was imposed.
Plaintiff is now serving this sentence in the custody of the Commissioner of Correction.
Prior to the enactment of Public Act 95-255, the application of which is the basis of this petition, § 54-125a(a) allowed a person convicted of a crime to go at large on parole, in the discretion of a panel of the Board of Parole, if statutory conditions were met. Subsection (b) of this statute provided that no person convicted of any offense committed with a firearm would be allowed on parole until such person had served 50 percent of the sentence imposed. It is clear that prior to Public Act 95-255, § 54-125a(a)(b) allowed the Board of Parole to consider for parole a person who had been convicted of an offense such as petitioner after such person had completed 50 percent of the sentence imposed.
The 1995 session of the General Assembly enacted Public Act 95-255 entitled "An Act Concerning Truth in Sentencing." The act amended subsection (b) of § 54-125 and included the following language:
 (2) A PERSON CONVICTED OF AN OFFENSE, OTHER THAN AN OFFENSE SPECIFIED IN SUBDIVISION (I) OF THIS SUBSECTION, WHERE THE UNDERLYING FACTS AND CIRCUMSTANCES OF THE OFFENSE INVOLVE THE USE, ATTEMPTED USE OR THREATENED USE OF PHYSICAL FORCE AGAINST ANOTHER PERSON SHALL BE INELIGIBLE FOR PAROLE UNDER SUBSECTION (a) OF THIS CT Page 11812 SECTION UNTIL SUCH PERSON HAS SERVED NOT LESS THAN EIGHTY-FIVE PERCENT OF THE DEFINITE SENTENCE IMPOSED. (3)
Section 2 of the Public Act required the Board of Parole to adopt regulations to ensure that a person convicted of offenses described in the amendment would not be released until he or she had served 85 percent of the sentence imposed.
The public act took effect on July 1, 1995, except that § (I) of the act, which included the language above quoted, took effect on July 1, 1996. It would appear then that Public Act 95-255 was in effect at the time petitioner committed the crime and that the section of the act involving the 85 percent rule was in effect at the time he entered his plea of guilty and at the time sentence was imposed.
The Board of Parole utilizes the date of sentencing as the determinative date for consideration of the 85 percent designation. Procedures adopted by the Board of Parole state that within two months of admission to the Department of Correction, a panel of the Board should make a determination as to whether or not an inmate would be required to serve 85 percent of a sentence before being eligible for parole.
Because petitioner was convicted after July 1, 1996, and his crime involved the use of physical force against another person, the panel determined that he would be ineligible for parole until he had served not less than 85 percent of the sentence imposed. Petitioner was informed of this determination by letter dated February 2, 1998.
By his petition, petitioner claims that his imprisonment is illegal. Specifically, it is claimed that the respondents' application of §54-125a(b) (as amended by Public Act 95-255) violates the ex post facto prohibitions of Article I of the United States Constitution.[1] Simply put, petitioner claims that he should be eligible for parole after serving 50 percent of his sentence in accordance with the law which he claims was in effect at the time the offense for which he is now incarcerated was committed.
 I.
The first issue which the Court must address is whether or not it has jurisdiction and the relief sought is available. Connecticut Practice Book § 23-24(l)(3).
In his petition, petitioner does not set forth any specific claim for relief. Paragraph 5 of the petition merely expresses a desire to present evidence that his confinement is illegal and that the operation of § CT Page 1181354-125a(b) to deny parole violates rights guaranteed by the United States Constitution.
Connecticut Practice Book § 23-22 requires that the petition be filed in conformance with the applicable forms and the rules of practice. Connecticut Practice Book § 10-20 requires that a complaint in a civil action contain a demand for relief which shall be a statement of the remedy or remedies sought. It has been held that a complaint which fails to contain a prayer for relief does not state a cause of action.Chapin v. Chapin, 155 Conn. 691, 692 (1967).
Although the petition fails to state a claim for relief, in his brief, petitioner asks the court to order: "(a) An initial parole hearing or equivalent consideration for parole upon completion of fifty (50) percent of petitioner's total effective sentence. (b) Such other relief as justice requires."
Assuming that the petition is not fatally defective, it must be determined whether or not the court has jurisdiction to grant this relief. The court is aware that there is a division of authority on this point. Robinson v. Commissioner of Correction, New Haven Judicial District, CV97-405187 (February 22, 2000); Charles v. Warden, Hartford Judicial District at Enfield, CV98-0576815 (February 19, 1999).
It is not the function of courts to decide moot questions disconnected from the granting of actual relief or from the determination from which no practical relief can follow. Therefore, the dispositive question is what, if any, actual remedy could be granted by the court in this matter. Sgarellino v. Hightower, 13 Conn. App. 591, 594 (1988).
The only respondents in this action are Warden G. K. Khalsa and John Armstrong, the Commissioner of Correction. The authority of the respondents is set forth in General Statutes Chapter 325. A careful review of this chapter fails to disclose any authority of the respondents to order, or schedule any parole hearing, or any other power over the granting of parole.
The legislature has established the Board of Parole as the sole agency in the State of Connecticut with authority over matters of parole including authority to grant parole hearings. General Statutes § 54-124
(2), § 54-138b. Respondents did not make the determination that petitioner was ineligible for parole until he served 85 percent of his sentence. Respondents have no authority under our law to make this determination. The decision was made by the Board of Parole, the sole agency with statutory authority over parole. The Board of Parole is not a party to this action. CT Page 11814
If the writ was granted and the relief sought in the brief was ordered, it would be a nullity and contrary to the statutory law of the state. Respondents have no authority to require that the Board of Parole grant any hearing or take any action with respect to petitioner's parole. If the application of Public Act 95-255 was found to be ex post facto and in violation of petitioner's constitutional rights as claimed and respondents were ordered to hold a parole hearing, they would have no authority to hold such hearing and, if they were ordered to require the Board of Parole to have such hearing, their order could not be enforced.
It is understood that under the provisions of General Statutes §52-470, the habeas court is empowered to grant such relief "as law and justice require" and the court has considerable discretion to provide a remedy so long as that remedy is commensurate with the scope of the constitutional violation which has been established. Gaines v. Manson,194 Conn. 510, 528, (1984). The remedy may be an absolute discharge, a denial of all relief, or a discharge conditioned on an event. Fredericksv. Reincke, 152 Conn. 50 1-507 (1965). Petitioner has asked for respondents to grant him a parole hearing upon completion of 50 percent of his total effective sentence and it has been determined that respondents have no authority under our law to grant a parole hearing. If law and justice require, however, a remedy could be fashioned ordering respondent to discharge petitioner from custody unless a parole hearing were granted within a specified time. Law and order, however, do not require such an order. This order, in all probability, would result in petitioner's discharge from custody since the Board, the only agency empowered to hold such a hearing, and not a party to this action, would not be subject to the order.
The issues addressed in this action are very similar to those presented in Puckett v. Abels, 684 So.2d 671 (Miss., 1996). That case, however, involved a declaratory judgment action concerning the applicability of a statutory amendment similar to Public Act 95-255. This is quite different from an application for a writ of habeas corpus against respondents who have no statutory authority to grant the relief sought.
It must be concluded that since no practical relief can be granted, the court does not have jurisdiction and the petition must be dismissed.
 II.
The issues raised by the petition in this case are similar to those raised in Vincenzo v. Warden, 26 Conn. App. 132 (1991). In that case, the Appellate Court determined that petitioner had no liberty interest in a claim for parole release and that, therefore, the trial court lacked CT Page 11815 jurisdiction over the subject matter of the petition.
The reasoning of the Vincenzo case is applicable to this petition.
 III.
Even though it must be found that the petition must be dismissed because of a lack of jurisdiction, it does not appear that Public Act 95-255 is being applied in violation of petitioner's constitutional rights against ex post facto application of the law. Assuming that petitioner is correct in his contention that the date of the commission of the crime is the operative date and not the date of conviction, it is undisputed that he committed the crime on August 7, 1995. It is also undisputed that the effective date of Public Act 95-255 was July 1, 1995. The amendment to General Statutes § 54-125 was in effect at the time plaintiff fired the shot, except that the effective date of the 85 percent requirement was delayed until July 1, 1996.
"The constitutional ex post facto prohibition forbids Congress and the states to enact any law which . . . imposes additional punishment to that then prescribed through this prohibition the Framers sought to assure that legislative acts give fair warning to their effect and permit individuals to rely on their meaning until explicitly changed." Weaverv. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed 217 (1981) (citations omitted). The reasoning of the Supreme Court in Weaver was based upon Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed. 344
(1997), in which the Florida death penalty law in effect at the time the crime was committed was found to be invalid. It was argued that since no valid statute was in effect at the time, an amended statute with a valid death penalty was ex post facto. The Supreme Court rejected this argument and stated that the existence of the operative fact of the invalid statute serves to warn Dobbert of the penalty which the state would seek to impose if he were convicted.
That reasoning appears to apply here. The existence of Public Act 255 at the time petitioner committed the crime served to warn him as to what he could expect in the way of parole.
 IV.
Accordingly, the petition is dismissed.
Joseph J. Purtill Judge Trial Referee