STATE OF CONNECTICUT *v.* RICHARD WEBER
(A.C. 9640)

PETERS, C. J., SHEA, CALLAHAN, GLASS, COVELLO, BORDEN and BERDON, Js.

Decision released February 4, 1992

*Thomas Ullman,* for the defendant (petitioner).

*Steven M. Sellers,* assistant state's attorney for the state.

PER CURIAM. The defendant has petitioned for certification for review by this court of the dismissal of

his appeal by the Appellate Court for failure to file his brief within the time limited by the rules of practice as extended by the Appellate Court. Only one member of this court deems the single issue raised by the petitioner, whether the dismissal was appropriate, sufficiently meritorious to warrant such review. Accordingly, because General Statutes § 51-197f requires the vote of two justices of this court for certification, we have today ordered that certification be denied. *State v. Weber,* 221 Conn. 909, 600 A.2d 1363 (1992).

The dissenting opinion does not rely on any of the criteria suggested by Practice Book § 4127[1] as grounds meriting the grant of certification. It relies on two bases for maintaining that certification is appropriate: (1) defense counsel's claim that his obligations to other clients assigned to him as a public defender made it impossible to comply with the time constraints of the rules of practice for filing a brief, even as extended by the Appellate Court from February 19, 1991, when it

---

[1] Practice Book § 4127 provides: "Certification by the supreme court on petition by a party or request by the appellate panel is not a matter of right but of sound judicial discretion and will be allowed only where there are special and important reasons therefor. The following, while neither controlling nor fully measuring the court's discretion, indicate the character of the reasons which will be considered:

"(1) Where the appellate court has decided a question of substance not theretofore determined by the supreme court or has decided it in a way probably not in accord with applicable decisions of the supreme court.

"(2) Where the decision under review is in conflict with other decisions of the appellate court.

"(3) Where the appellate court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by any other court, as to call for an exercise of the supreme court's supervision.

"(4) Where a question of great public importance is involved.

"(5) With respect only to appeals from the appellate court, where the judges of the appellate panel are divided in their decision or, though concurring in the result, are unable to agree upon a common ground of decision."

was due, until September 5, 1991, when the appeal was dismissed; and (2) the well established constitutional right of the defendant to a disposition of his appeal on the merits.

Whether there was any reasonable excuse for defense counsel's delay of more than seven months beyond the forty-five days prescribed by Practice Book § 2007 for filing an appellant's brief is not an issue that this court is as competent to consider as the Appellate Court, which had granted his three motions extending the time to June 3, 1991, and had also refrained from actually dismissing the appeal until September 5, 1991. An assertion that counsel has been so overburdened by his other assignments that he could not reasonably be expected to file a brief within the time allowed is a familiar basis for seeking an extension of time. Such a claim can hardly be deemed as a matter of law to constitute the "extraordinary cause" required by Practice Book § 4040 (c) (2) for an extension of time. The Appellate Court was not bound to accept defense counsel's assertion at face value simply because, in responding to the petition, the state, which has frequently sought extensions on similar grounds, agreed that he was overburdened. If agreement between the state and defense counsel that such delay was justified were held to mandate an extension of time, the Appellate Court would have little control over its docket. Since dismissal is a sanction authorized by Practice Book § 4055 for failure to file a brief within the time allowed, there appears to be little basis for reviewing this exercise of discretion by the Appellate Court regulating the progress of appeals in that court.

We agree with the dissenting opinion that the dismissal of the appeal that has resulted from defense counsel's failure to file his brief within the time allowed cannot be permitted to deprive the defendant of his con-

stitutional right to appellate review of his conviction on the merits. The dismissal does terminate the present appeal, but it does not bar the defendant from proceeding with a habeas corpus petition seeking the opportunity to file a new appeal. As the basis for such a petition under the circumstances of this case would ordinarily be the ineffective assistance of counsel, his present counsel would not be likely to represent the defendant in a new appeal. Whether or not there is justification for present counsel's inordinate delay in filing a brief, his services in this appeal may well have been ineffective and the defendant may have been deprived of his constitutional rights.

It is unclear whether an additional proceeding in habeas corpus is a more efficient method of vindicating the defendant's right to an appeal than ordering reinstatement of his present appeal after a further proceeding in this court. Nevertheless, it is essential that the authority of the Appellate Court to impose sanctions for egregious violations of the rules of practice not be undermined for considerations of judicial efficiency in a single case. That goal for the judicial system as a whole cannot be achieved unless all members of the bar come to realize that sanctions will be imposed for serious violations of the rules of practice, which are designed to ensure that appeals are disposed of without inordinate delay.

BERDON, J., dissenting. I would grant the defendant's petition for certification raising the sole question of whether the Appellate Court abused its discretion by not vacating its order to dismiss the defendant's appeal. Because I believe that the Appellate Court abused its discretion under the facts of this case, upon the granting of certification, I would summarily vacate the dismissal, and direct that the defendant file his brief in the Appellate Court within ten days. The state also

urges that justice requires that we grant the petition for certification and summarily vacate the order of dismissal.

The relevant facts are as follows. The defendant, Richard Weber, was convicted of assault in the second degree on May 30, 1990, and on August 20, 1990, he was sentenced to a term of five years imprisonment. The trial court, *Hadden, J.,* appointed the trial counsel, an assistant public defender, to prosecute the defendant's appeal.

The trial transcript was not completed until January 8, 1991. On February 11, 1991, the Appellate Court granted the defendant's first motion for an extension of time to file his brief on March 15, 1991; and, pursuant to a further request, the court granted an extension of time to April 15, 1991. On May 2, 1991, the Appellate Court granted a third motion for an extension of time with the following proviso: "This appeal will be dismissed unless the defendant-appellant's brief is filed by June 3, 1991." Each request for an extension of time was predicated on defense counsel's representations that, as an assistant public defender, he was engaged in heavy appellate and trial caseloads that prevented him from reviewing the 950 pages of transcripts and preparing the appellate brief for the defendant. The Appellate Court was furnished the names of the cases assigned to counsel and the trial judge involved in those other matters.

On May 30, 1991, before the expiration of the last extension of time, defense counsel filed a motion to "rescind or amend the order of final extension," seeking a further extension of thirty days. In the brief supporting the motion, he again detailed his onerous criminal assignments[1] and added the following infor-

---

[1] The defendant's brief contained the following representations: "Counsel is an Assistant Public Defender in the New Haven Judicial District and

mation regarding a case for which he was presently trial counsel: "On May 20, 1990, jury selection [began] in *State* v. *Terrence Gomez* . . . before Judge William Hadden. Mr. Gomez is accused of felony murder, kidnapping, first degree, and conspiracy to commit kidnapping, first degree. Nine jurors have been selected as of the writing of this motion and Judge Hadden has informed prospective jurors that the case is likely to conclude sometime during the week of July 8th." When each motion for an extension of time was filed, the state either urged the Appellate Court to grant the defendant's motion or did not oppose it.

On June 26, 1991, the Appellate Court denied the defendant's motion to rescind the court's order and, on September 5, 1991, dismissed the defendant's appeal. Thereafter, the defendant filed with this court a motion for review and a petition for certification, both of which were denied. On October 15, 1991, counsel for the defendant filed his brief in the Appellate Court together with a motion for permission to file a late brief. The brief and motion were returned to him by the clerk

---

is carrying an active trial caseload of major felony cases including six homicide cases. As of April 30, 1991, counsel carried an active pending felony caseload of thirty-three files awaiting jury trial. An additional six files are on counsel's caseload at varying stages of the criminal process.

"Counsel has argued three cases before the Appellate Court over the last five weeks. They include: *State* v. *Cayouette*, A.C. 9101 on April 24, 1991; *State* v. *Arline*, A.C. 8463 on April 30, 1991; *State* v. *Ortiz*, A.C. 8932, on May 28, 1991.

"Additionally, counsel had three separate probable cause hearings scheduled over the last six weeks on newly assigned murder cases. These include: *State* v. *Ham*, CR6-338144 nolled on May 9, 1991 after considerable preparation; *State* v. *Abdul Muhammad*, CR6-339276, no probable cause found after hearing with substituted information charging manslaughter first degree filed thereafter on May 23, 1991; *State* v. *Scott Lewis*, CR6-340523, state elected not to proceed with probable cause hearing and filed substitute manslaughter charges in a double homicide case on May 30, 1991. Finally, counsel had an initial commitment proceeding at the Psychiatric Security Review Board concerning a recently acquitted client by reason of insanity on May 23, 1991."

of the court with the notation that the defendant's case had been dismissed, and thus, nothing was pending. On October 16, 1991, the defendant filed a motion to rescind the court's dismissal order and to reopen the case, which stated the following: "The appellant's brief has been completed, and is being delivered to the clerk of the Appellate Court contemporaneously with this motion." The state filed a response, again urging the Appellate Court to grant the defendant's motion and to allow the late filing of the briefs. The Appellate Court's denial of the motion on November 20, 1991, is the subject matter of this petition for certification.

Although the Appellate Court must be able to control its own docket, its discretion in doing so is not unbridled. In exercising our supervisory powers over the Appellate Court; Practice Book § 4127 (3); we are duty bound to determine whether the Appellate Court abused its discretion. I conclude that, in this instance, it did.

Fundamental fairness requires that when a person's liberty is at stake, the ultimate sanction of dismissal of that person's appeal for a violation of a court rule, even if the conduct of the criminal defendant is implicated, should be a last resort. We just recently emphasized that the severity of the preclusion sanction for the failure to comply with the rules of the court must be balanced with the defendant's right to present a defense. *State* v. *Genotti*, 220 Conn. 796, 810–11, 601 A.2d 1013 (1992). When, however, the criminal defendant is not personally responsible for the violation of a rule, it is crystal clear that appellate courts must refrain from dismissing the appeal and should consider alternate sanctions against the attorney to control its docket. See *Taylor* v. *Illinois*, 484 U.S. 400, 431–32, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988) (Brennan, J., dissenting).[2]

---

[2] "In the absence of any evidence that a defendant played any part in an attorney's willful [rule] violation, directly sanctioning the attorney is

In this case, even if it was appropriate to apply a balancing test to determine whether a sanction should be imposed on the defendant; see *Taylor* v. *Illinois,* supra; a factor of particular importance would be that the assistant public defender's failure to abide by the rules was not "willful and motivated by a desire to obtain a tactical advantage." Id., 415. It is quite obvious that the reason for the delay in filing the defendant's brief in this case was the already heavy burden placed upon our overworked public defenders. The state recognized this in its reply to the petition for certification when it wrote: "The State of Connecticut does not, and has not, opposed the limited relief requested by the petitioner because the interests of justice dictate otherwise. There are, of course, instances when the conduct of the defendant, or his counsel, disentitled him to appellate redress. Further, the integrity [of] the appellate process itself may warrant the kind of action taken by the Appellate Court. In the state's view, however, this is not a case warranting such action. Had there been an indication in the record that . . . [defense counsel] had been dilatory in the prosecution of this appeal, or that the defendant had, through his own conduct, disentitled himself to an appellate forum, the state would have advocated dismissal of the appeal and opposed its reinstatement. But the record does not indicate this. Rather, it indicates an overworked public defender doing his best to protect his client's appellate rights without sacrificing his [other] clients' rights to a fair trial and effective assistance of counsel at their criminal trials. The delay in this appeal, then, appears to be due to counsel's mammoth caseload and not from his lack of regard for his responsibility to the Appellate Court."

not only fairer but *more* effective in deterring violations . . . ." (Emphasis in original.) *Taylor* v. *Illinois,* 484 U.S. 400, 433, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988) (Brennan, J., dissenting).

The court's dismissal also deprived the defendant of his constitutional rights. "Although there is no constitutional right of appeal [under the federal constitution] . . . the right to appeal, once granted, invokes so significant a protection of liberty that it must be made available to all persons convicted of crimes." (Citation omitted.) *Gaines* v. *Manson,* 194 Conn. 510, 515, 481 A.2d 1084 (1984). We also pointed out in *Gaines* that " '[i]n the exercise of such a right, invidious discriminations, such as between rich and poor, implicate constitutional guarantees of due process and equal protection of the laws." Id., 515–16, citing *Douglas* v. *California,* 372 U.S. 353, 355, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963). In this case, the avenues to the appellate process have not been "kept free of unreasoned distinctions"; *Rinaldi* v. *Yeager,* 384 U.S. 305, 310, 86 S. Ct. 1497, 16 L. Ed. 2d 577 (1966); when the state appoints an overburdened assistant public defender to prosecute an indigent defendant's appeal, and the end result is that his appeal is dismissed on the basis of counsel's inability to submit his brief within the time parameters set by the court because of other professional obligations. In this case, the avenues to appellate review have been barricaded. Surely this does not fulfill the indigent defendant's constitutional right to be represented by counsel or his right to effective assistance of appellate counsel.

Finally, I cannot agree with the majority's response that the defendant's rights can be vindicated by proceedings in habeas corpus. It may be an efficient method in the eyes of the majority, but efficiency is not the touchstone for liberty. Habeas corpus proceedings simply take time.[3] This time weighs heavily on a person accused of a crime—whether or not he or she is incarcerated pending disposition of the case or out on

---

[3] To require the defendant to go the route of habeas corpus also puts an additional burden on the judicial system, the public defenders and state's attorneys. Surely, we could do without this additional litigation.

bond—the continued psychological pressure of the criminal accusation hangs over the head of the accused. Also, the majority fails to appreciate that noncompliance with the rules was not the result of the doings of private counsel, but rather the overburdened public defender assigned by the state. And, in case we need a reminder, the appointment of counsel is not a matter of judicial grace, it is constitutionally mandated. I am unable to understand what the majority means by "extraordinary cause," but I do understand what justice means. Accordingly, I dissent.