STATE OF CONNECTICUT *v.* RAYMOND PHIDD
(13999)

Dupont, C. J., and Lavery and Heiman, Js.

Argued November 27, 1995—officially released May 23, 1996*

---

* May 23, 1996, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Mary Miller Haselkamp,* assistant public defender, for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *Donald Browne,* state's attorney, and *Cornelius Kelly,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of conviction, following a jury trial, of possession of marijuana with intent to sell in violation of General Statutes § 21a-277 (b). On appeal, the defendant claims that the trial court (1) denied him his state and federal constitutional rights to conflict free representation by failing to inquire of him about a possible conflict of interest arising because he and a codefendant were jointly represented for a time at his trial by the same counsel, and (2) denied him his right to due process and a fair trial by failing to declare a mistrial as a result of the alleged conflict of interest. We affirm the judgment of conviction.

Certain facts serve as the background for the issues raised. On August 6, 1990, a member of the Bridgeport police department witnessed drug activity on the corner of Stratford and Union Avenues. After observing three individuals for approximately fifteen minutes and believing that he had probable cause to arrest the individuals, he radioed for backup. Two additional officers arrived and arrested two of the three suspects, the defendant and David Bell.

The defendant and Bell were originally codefendants in a trial that began on May 29, 1991, in which both

were represented by the same attorney. After the state presented its evidence against both, the state entered a nolle in Bell's case because it believed that the evidence was insufficient to support a conviction as to him. The attorney, as Bell's counsel, agreed not to make a motion to dismiss the case against Bell until after the jury returned a verdict in the defendant's case.[1] The

---

[1] The following discussion, outside the presence of the jury, took place among Cornelius Kelly, the state's attorney, William T. Browne, the defendant's attorney, and the trial court:

"Mr. Kelly: Your Honor, with respect to David Bell, docket number CR-954534, based upon the information the state has at this point and evidence that is presented, the state enters a nolle against—with respect to Mr. Bell's case.

"The Court: All right, that is within your prerogative.

"Mr. Kelly: We will be proceeding with the matter against Mr. Phidd.

"Mr. Browne: Preliminarily discussed, at the end of Mr. Phidd's case, I might ask Mr. Bell's nolle be made into a dismissal, at least I will make the motion to that effect.

"The Court: You may make the motion now, he's been put in jeopardy.

"Mr. Browne: I asked Neil [the state's attorney] about that and he would prefer I would not make the motion.

"The Court: All right, make it at the end of the case, whichever way you want.

"Mr. Browne: I don't want to louse up what we talked about.

"Mr. Kelly: Fine. Once Mr. Phidd's case is disposed of.

"Mr. Browne: I would like to use Mr. Bell as a witness.

"The Court: There is no problem.

"Mr. Browne: Okay. Just so . . .

"The Court: You're not precluded from that.

"Mr. Browne: Thank you, Judge."

On the following day the issue again arose:

"Mr. Browne: I would not pursue a motion to dismiss until the entire case is completed. Your Honor expressed an opinion since the defendant Bell may be put in jeopardy, motion to dismiss stands at anytime. I don't want to do anything I didn't agree to. I do intend to call Mr. Bell as a witness. I don't know if that creates any problems.

"The Court: It creates a problem for me. I'll tell you what the problem is. As of this time he is still, in fact, a defendant.

"Mr. Browne: Yeah.

"The Court: Now, in putting on your case, if he testifies—does he testify as a defendant or a person not as a defendant—

"Mr. Browne: If the case is—If the charges are no longer pending against him, he is no longer in jeopardy. He is just a witness, not a defendant.

"The Court: Unless there is some strategy I am not aware of, I don't understand the difference between . . .

defendant's counsel at the close of the state's case moved for a judgment of acquittal on behalf of the defendant based on a claim of insufficient evidence, which the trial court denied.

The trial proceeded against the defendant only, and the jury was made aware of that fact before the defendant presented his case.[2] The defense called both the defendant and Bell as witnesses. Bell's testimony was favorable to the defendant. Bell testified that he was walking up Stratford Avenue, from the direction of Carol Avenue, where he met the defendant and where he and the defendant talked for several minutes before departing. The defendant testified that he was walking to his girlfriend's house that night when he encountered Bell and, after a brief discussion, began walking down Union Avenue where he was arrested. The jury returned a verdict of guilty on May 31, 1991, and the defendant was sentenced on August 29, 1991. No direct appeal was taken from the judgment of conviction.

On July 7, 1992, the defendant, pro se, filed a petition for a writ of habeas corpus, alleging that "my lawyer

---

"Mr. Browne: Mr. Kelly and I almost jokingly said, if a motion to dismiss is granted and Bell got on the stand and said, I did it all and Mr.—did not do nothing.

"The Court: That is a valid point.

"Mr. Browne: I would not do anything like that. I wouldn't do that. Leave it to Mr. Kelly to think of that.

"The Court: That is a concern.

"Mr. Kelly: That is a concern I had, but I think . . .

"Mr. Browne: That's not going to happen.

"The Court: Why don't we indicate that the state nolled it and you just postpone your motion to the end of the case.

"Mr. Browne: That's what . . .

"The Court: Basically what . . .

"Mr. Browne:—is what we agreed to."

The charge against David Bell was dismissed on June 5, 1991.

[2] The trial court informed the jury as follows: "At this point, this case only concerns the defendant Phidd. You are not to speculate as to the matter—why the defendant Bell's matter was taken away from your consideration. It should not have any effect on your deliberations of the case against Mr. Phidd."

didn't file the paper," "the lawyer didn't follow through," and that the defendant had "no knowledge of what my lawyer was obligated to do for me." On May 20, 1994, the habeas court, *Sferrazza, J.*, pursuant to a stipulation between the parties, restored the defendant's appellate rights. On August 26, 1994, another trial court, *McGrath, J.*, waived fees, costs, and security necessary for taking the appeal. The defendant appealed from the judgment of conviction on September 13, 1994.[3]

## I

### HABEAS COURT'S POWER TO RESTORE APPELLATE RIGHTS

Before addressing the defendant's claims on appeal, we must first address the issue of the jurisdiction of the habeas court to accept the stipulation and to extend the time for appeal to this court by restoring the defendant's right to appeal his conviction. This necessarily requires an answer to the question of whether the habeas court had the power to restore an appellate right to appeal not previously exercised by the defendant. The issue of whether a habeas court can grant the relief of restoration of an appeal right, upon stipulation of the parties, has not yet been definitively resolved in this state. See *Douglas* v. *Warden*, 218 Conn. 778, 791, 591 A.2d 399 (1991).

The stipulation provided: "The parties in the above-captioned case hereby stipulate that the Petitioner's right to appeal his conviction(s) in Docket Nos. CR-54545 and CR-54534, from the Judicial District of Fairfield at Bridgeport, GA 2, be restored in full; and that the Petitioner's application for a writ of habeas corpus,

---

[3] The state made no timely motion to dismiss the appeal on the ground that the appeal was not filed within twenty days of the claimed restoration of the defendant's appellate rights. Pursuant to *LaReau* v. *Reincke*, 158 Conn. 486, 264 A.2d 576 (1969), any right to object on the ground of a late filing was, therefore, waived by the state.

now pending, is withdrawn without prejudice. Said application for a writ of habeas corpus may be reinstated upon completion of the Petitioner's appeal, if necessary." The effect of the acceptance of the stipulation by the court was to restore the defendant's right to a direct appeal that had expired nearly three years previously.

Our analysis begins with the recognition of two relevant principles. First, the time within which to bring an appeal when established by judicial rule is not a jurisdictional limit; *New England Savings Bank* v. *Meadow Lakes Realty Co*, 235 Conn. 663, 668 A.2d 712 (1996); second, there is no constitutional right to an appeal, but rather a statutory right. *Evitts* v. *Lucey*, 469 U.S. 387, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). The significance of the former is that we are not dealing with a situation in which the trial court has attempted to thrust jurisdiction on us where no jurisdiction could exist, and the significance of the latter is that, although we are not dealing with a deprivation of a constitutional right to appeal, we are dealing with a cure for an allegedly unconstitutional deprivation of rights where a statutory right to appeal exists. If a state grants a statutory right to appeal judgments of conviction, the procedures relating to the appeal must conform with due process, including the right to have competent counsel to prosecute the appeal. Id.

Our analysis must also include the fact that the writ of habeas corpus is the subject of a statute, General Statutes § 52-470 (a), which gives the habeas court the power to "dispose of the case as law and justice require" and that another statute, General Statutes § 51-14, provides that the appellate rules of practice cannot abridge, enlarge or modify any substantive right or the jurisdiction of the courts.

There is a paucity of Connecticut cases that discuss, either directly or indirectly, this issue of whether a

habeas court has jurisdiction to reinstate appellate rights of a defendant that would otherwise have been lost because of untimeliness. In *Fredericks* v. *Reincke*, 152 Conn. 501, 208 A.2d 756 (1965), the issue of a habeas court's ability to reinstate a right to appeal a judgment of conviction was addressed. In *Fredericks*, the petitioner sought a writ of habeas corpus claiming that his constitutional right to counsel was violated because his counsel had allowed his direct appeal to be dismissed for lack of diligence. The court, relying on *Douglas* v. *California*, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963), found that "the plaintiff had been denied his right to counsel to perfect his appeal and directed his discharge from prison *unless, at his further request,* counsel was appointed to pursue his appeal and *necessary extensions of time* in which to perfect the appeal were granted." (Emphasis added.) *Fredericks* v. *Reincke*, supra, 503.

The respondent warden cross appealed in *Fredericks* claiming that the habeas court was without authority to allow a late appeal. Id., 506.

The court, after stating that ordinarily the Superior Court lacks authority to allow a late appeal, reasoned that if, in a habeas case, it has been properly determined that an appeal would have existed to complain of the denial of a right granted by the federal constitution, any rule restricting an appeal merely because of lapse of time would necessarily be ineffective. Id., 508. Thus, the *Fredericks* court recognized that a habeas court has the power in some instances to reinstate an appeal. The rationale for the *Fredericks* reinstatement of the defendant's appeal is that because the defendant was constitutionally entitled to competent counsel to represent him on appeal, no rule can absolutely prevent the habeas court from reinstating that appeal where the

appeal had been dismissed for a failure of counsel to prosecute it.[4]

*Fredericks* involved a request for a reinstatement of an appeal that had previously been dismissed whereas the present case involves the restoration of the right to take a direct appeal, no appeal having ever been taken. Under the circumstances of the present case, there is no significant difference between an order of reinstatement by the habeas court and the order of restoration because the claim in *Fredericks* and in this habeas appeal is the ineffective assistance of appellate counsel.[5]

---

[4] When *Fredericks* v. *Reincke*, supra, 152 Conn. 501, was decided, Practice Book § 665 provided: "The judge who tried the case, or the court in which it was tried, may, for good cause shown, extend the time provided for filing the appeal or filing any paper or taking any other steps necessary to perfect the appeal, except as otherwise provided in these rules. . . . No extension of time for filing of the appeal . . . shall be granted unless the original motion for extension is filed before the time for taking the appeal . . . has expired and any subsequent motion is filed before the expiration of any previous extension." This rule, therefore, permitted a trial court to grant extensions for an unlimited duration as long as the requests were filed before the expiration of any previous extensions.

Prior to this rule, a trial court had the authority to grant extensions liberally; *Equitable Trust Co.* v. *Plume*, 92 Conn. 649, 652, 103 A. 940 (1918); and to grant them even after the time for filing had expired. *General Hospital Society* v. *New Haven Rendering Co.*, 79 Conn. 581, 582 n., 65 A. 1065 (1907). *DeTeves* v. *DeTeves*, 202 Conn. 292, 520 A.2d 608 (1987), and Practice Book § 4040 (a) are now the controlling authorities for the length of extensions of time that a trial court may allow in which to file appeals. Effective October 1, 1982, "§ 3097 (a) [now § 4009] does not provide the trial court with power to extend the time period for filing an appeal more than twenty days from the expiration date of the original appeal period." *DeTeves* v. *DeTeves*, supra, 298.

It is also important to note that when *Fredericks* was decided, the rules of practice did not provide a procedure in which a party could address an appellate court for the purpose of requesting permission to file a late appeal. See Practice Book § 4183 (6). Appellate courts, however, sua sponte, can resurrect appellate rights because of their supervisory power and their power to suspend the rules of procedure. *State* v. *Stead*, 186 Conn. 222, 228, 440 A.2d 299 (1982).

[5] Different reasoning might be used for restoration of appellate rights, as opposed to reinstatement of appellate rights, if the defendant's own conduct

In *LaReau* v. *Reincke*, 158 Conn. 486, 490, 264 A.2d 576 (1969), our Supreme Court addressed the issue of whether the petitioner's failure to file an appeal from a habeas court's action within the requisite twenty day period constituted a jurisdictional defect stripping the appellate courts of power to entertain the appeal, or whether the respondent's failure to object in a timely manner to an untimely appeal within ten days constituted a waiver. The court found that the twenty day time period was a rule of court and not a constitutionally or statutorily created condition precedent for a court's jurisdiction. Id., 492. Because the rule did not affect an appellate court's jurisdiction, the court concluded that the respondent waived his ability to object by failing to file a motion to dismiss in a timely manner. Id., 494, citing *Lengel* v. *New Haven Gas Light Co.*, 142 Conn. 70, 75, 111 A.2d 547 (1955).

In *State* v. *Stead*, 186 Conn. 222, 490 A.2d 299 (1982), decided before the change relating to the time to file an appeal in Practice Book § 3097, now § 4040 (a),[6] it was determined that the rules did not allow the trial court to grant a defendant's motion for an extension of time to file an appeal after the time for filing had expired. The Supreme Court, however, in the exercise of its supervisory powers allowed the late appeal. Although the trial court on the facts of *Stead* was without power to grant an extension, the court, in a footnote, states as dicta that if it is determined in a habeas case that a defendant was deprived of a constitutional right that could have been asserted in a direct appeal, then

was the reason for the failure to file a timely direct appeal; *Goeke* v. *Branch*, 514 U.S. 115, 115 S. Ct. 1275, 131 L. Ed. 2d 152 (1995); or if a deficiency in the court system itself cause the failure. *Arizona* v. *Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991).

[6] Practice Book § 4040 (a) "does not provide the trial court with power to extend the time period for filing an appeal more than twenty days from the expiration date of the original appeal period." *DeTeves* v. *DeTeves*, supra, 202 Conn. 298.

a trial court would be authorized to allow a late appeal. *State* v. *Stead,* supra, 226 n.6.

The rules of practice are not determinative of our issue, however, but rather our statutes, the historical use of a writ of habeas corpus and case law more recent than *State* v. *Stead,* supra, 186 Conn. 222, *LaReau* v. *Reincke,* supra, 158 Conn. 486, *State* v. *Brown,* 157 Conn. 398, 254 A.2d 570 (1969), and *Fredericks* v. *Reincke,* supra, 152 Conn. 503, control.

In *State* v. *Robinson,* 10 Conn. App. 520, 523 A.2d 1365, cert. denied, 204 Conn. 807, 528 A.2d 1154 (1987), cert. denied, 488 U.S. 899, 109 S. Ct. 244, 102 L. Ed. 2d 233 (1988), this court addressed the issue of a habeas court's authority to grant a conditional remedy of discharge in the event the direct appeal of the petitioner was not reinstated "within forty-five days." The habeas court's order was rendered pursuant to a stipulation of the parties. The petitioner, in accordance with the order, filed a motion to reinstate the appeal, which was granted by the Appellate Court. We recognized the habeas court's power to order discharge of a petitioner from custody in the event an appeal was not reinstated, but noted that the broad power vested in the trial court in a habeas corpus action "does not include the trial court's unnecessary intrusion into an appellate court's supervision and control of its own rules of procedure." Id., 524. We, therefore, vacated the habeas court's order of discharge and struck the time limitation contained in the order. Id., 527. The order in *Robinson,* which reflected the stipulation, permitted the petitioner to seek reinstatement of an appeal that had previously been dismissed for failure of his appellate counsel to file a brief, whereas, in the present case, the order that reflected the stipulation "restored in full" the petitioner's right to appeal, which right had not been exercised previously. The order in the present case is silent as to how the restoration was to be accomplished. The

defendant did not move to file a late appeal in this case, but simply filed one. The appeal form, which is dated September 13, 1994, on its face states that the appeal is from a judgment of August 29, 1991. This court did not question the lapse of time until the case was assigned for oral argument.[7]

The Appellate Court has considered two recent cases in which petitioners sought reinstatement of their appellate rights due to their trial counsel's failure to file an appeal, in which the habeas court denied the relief sought, on the ground that the evidence supporting the claim of ineffective assistance of counsel was not believable. On appeal by the petitioners, we upheld the habeas court's ruling in each case, stating that there was insufficient evidence to support a claim of deprivation of a constitutional right, and affirmed the habeas court's dismissals of the petitions. *Williamson* v. *Commissioner of Correction*, 39 Conn. App. 773, 667 A.2d 562 (1995); *Davis* v. *Commissioner of Correction*, 39 Conn. App. 735, 667 A.2d 560 (1995). In neither opinion did we take issue with the relief that the petitioners had sought from the habeas court, i.e., the restoration of their appellate rights.

A dismissal of an appeal for failure of a defendant's counsel to prosecute an appeal with due diligence does not, per se, deprive a defendant of his constitutional rights because a defendant may proceed subsequently with a habeas corpus petition, seeking the opportunity to file a new appeal. *State* v. *Weber*, 221 Conn. 84, 86–87, 602 A.2d 963 (1992). This clearly implies that a habeas court has jurisdiction to allow a new appeal, thereby reinstating a defendant's appellate rights.

---

[7] Because of the unusual posture of the case, we "conclude that under our supervisory authority . . . we would have granted a timely motion to file a late appeal seeking the exercise of that authority"; *State* v. *Stead*, supra, 186 Conn. 228; had one been filed.

By statute, the habeas courts are granted jurisdiction to dispose of cases as "law and justice require"; General Statutes § 52-470 (a); and the rules of practice cannot abridge that right. General Statutes § 52-14. Jurisdiction is defined by statute; *Grieco* v. *Zoning Commission*, 226 Conn. 230, 231, 627 A.2d 432 (1993); and it is not the rules of practice that confer jurisdiction. *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 761, 628 A.2d 1303 (1963). Time constraints that are created by court rule can be waived by courts, such as the limitation on the time for taking appeals, but jurisdiction cannot be expanded or contracted.[8] Id.

A writ of habeas corpus seeks a special and extraordinary remedy for illegal restraint. The remedy may be an absolute discharge, a denial of all relief or a discharge conditioned on an event, such as appellate review or a new trial. *Fay* v. *Noia*, 372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963); *Fredericks* v. *Reincke*, supra, 152 Conn. 506–507. The statutory language "dispose of the case as law and justice require" gives the habeas court the power to conform a remedy to the particular facts. We conclude that a habeas court may choose a remedy of the restoration of appellate rights as a condition of discharge.[9] This conditional discharge is a necessary power when a habeas court, on the basis of the facts, determines that a denial of all relief would be inequita-

[8] General Statutes § 52-470 (b) creates a jurisdictional bar that prevents the Appellate Court from hearing an appeal from a judgment rendered in a habeas corpus proceeding unless, within ten days after judgment, a petition for certification to appeal is filed. *Iovieno* v. *Commissioner of Correction*, 40 Conn. App. 553, 672 A.2d 530, cert. granted, 237 Conn. 910, 675 A.2d 456 (1996). The present case is not an appeal from a habeas proceeding and *Iovieno* has no application.

[9] We are aware that this conclusion can result in an addition to an appellate docket. Other instances of legislative grants of power to a trial court to add to the docket of the appellate courts exist, however, such as General Statutes § 52-470 (b), allowing a judge before whom a habeas corpus proceeding was tried to certify a question for review and General Statutes § 54-96, allowing a presiding judge to grant permission to the state to take an appeal.

ble and that an absolute discharge from custody is equally inequitable. An order for a new trial or an order for appellate review of the first trial for alleged constitutional improprieties may be warranted, failing which the petitioner may be discharged. See *Dowd* v. *United States ex rel Cook*, 340 U.S. 206, 209, 71 S. Ct. 262, 95 L. Ed. 215 (1951); see *State* v. *Nash*, 149 Conn. 655, 657–58, 183 A.2d 275, cert. denied, 371 U.S. 868, 83 S. Ct. 130, 9 L. Ed. 2d 104 (1962).

The next question we must decide is whether the restoration of appellate rights can arise by stipulation of the parties, without the necessity of any hearing or finding by the habeas court, as to the reason for the lapse of time to assert the right of appeal or as to whether the petitioner deliberately bypassed a direct appeal. We are not aware of any Connecticut case that discusses this issue. *State* v. *Brown*, supra, 157 Conn. 398, makes it clear that if there is no finding by a habeas court that a petitioner has not deliberately bypassed a direct appeal or that the denial of an appeal violated his constitutional rights, the court is without authority to restore appellate rights. Unlike in the present case, there was, however, no stipulation by the parties in *Brown*. Nor was there a stipulation in *Vena* v. *Warden*, 154 Conn. 363, 225 A.2d 802 (1966), which also holds that a petitioner in a habeas case must allege and prove the reason for a failure to take a direct appeal.

A stipulated judgment is a contract between the parties and not an adjudication on the merits. *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, 191 Conn. 555, 468 A.2d 1230 (1983), citing *Owsiejko* v. *American Hardware Corp.*, 137 Conn. 185, 75 A.2d 404 (1950). In the present case, the parties did not stipulate to any facts, but rather stipulated to a remedy, without any determination or agreement that a constitutional deprivation occurred at trial or that the petitioner had not

deliberately bypassed a direct appeal, or that he was denied effective assistance of appellate counsel.

The scope of a habeas court's authority to furnish a remedy as justice requires is limited to the constitutional deprivation found. " 'In adjudication of petitions for habeas corpus, the remedies available to a court depend upon the constitutional rights that are being vindicated.' *Gaines* v. *Manson*, 194 Conn. 510, 516, 481 A.2d 1084 (1984)." *Copas* v. *Warden*, 30 Conn. App. 677, 686, 621 A.2d 1378, on appeal after remand, 234 Conn. 139, 662 A.2d 718 (1995). In ordering the restoration of appellate rights, the habeas court here made no findings on the merits. The question is whether the stipulation can be treated as a substitute for findings by the habeas court.

Although the issue in *State* v. *Robinson*, supra, 10 Conn. App. 520, originated from a stipulation entered between the parties, which formed the bases for the order of the habeas court, and although the Appellate Court did not vacate the order on the ground that a constitutional violation must be found before a remedy is furnished, we stated that "[i]t is important to note that in reaching this conclusion [to vacate the order], we are *not* reviewing the propriety of the trial court's action in a collateral habeas corpus proceeding not presently before this court." (Emphasis in original.) Id., 525. We also stated that a habeas court has considerable discretion to frame a remedy when disposing of a case as law and justice require. Id., 523–24. The case, however, does not serve to endorse a habeas court's power to grant a stipulated remedy without making *its own* findings of fact to support the stipulation.

The rationale for the holding of *Vena* v. *Warden*, supra, 154 Conn. 363, namely, that the determination of whether a prisoner has deliberately bypassed the orderly process of an appeal must be made based on

the facts of each case, is that unless such a procedure is followed, a long term prisoner could defer a habeas action until all evidence of conviction has disappeared so that if he is successful on a habeas corpus petition, he would be released regardless of the evidence originally available to prove his guilt. Id., 366; see *Fay* v. *Noia*, supra, 372 U.S. 440. Where the state, however, has agreed by stipulation that a petitioner's right of statutory appeal should be restored, that rationale is diluted.

General Statutes § 52-470 (a) provides that a "habeas court shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments therein, and inquire fully into the cause of imprisonment . . . ." The proceeding is "summary" in the sense that it should be heard promptly, without continuances; see *Hogewoning* v. *Hogewoning*, 117 Conn. 264, 265, 167 A.2d 813 (1933); but the use of the word also implies that the proceeding should be short, concise and conducted in a prompt and simple manner, without the aid of a jury, or in other respects out of the regular course of the common law. *Kredi* v. *Benson*, 1 Conn. App. 511, 514 n.2, 473 A.2d 333 (1984).

A formal stipulation of facts by the parties constitutes a judicial admission and should usually be adopted by the court deciding the case. *King* v. *Spencer*, 115 Conn. 201, 161 A. 103 (1932). An admission concedes the truth of some fact so that no evidence need be offered to prove it. *State* v. *Rodriquez*, 180 Conn. 382, 396, 429 A.2d 919 (1980). Here, the stipulation does not relate to a fact, but to the conclusion that the defendant's appellate rights should be restored. In civil cases, conclusory admissions are not binding on a court because a court may be justified in deviating from the conclusions if they are unsupported by underlying facts placed in evidence.

In this habeas case, no underlying facts were placed in evidence and no fact in support of the conclusion

was conceded or admitted. The state is not like a party in the usual civil case, however, because it exercises the public's interest in vindicating its criminal laws. *State* v. *Rodriguez*, supra, 180 Conn. 397. In performing that role in the present case, the state had to decide in this case whether, in the event a new trial was ordered, after the restoration of the defendant's appeal rights, it was likely the defendant could be prosecuted again. The state had knowledge of the case, it having already been tried, and knowledge of whether the defendant's claims arising out of his trial merited review, as well as knowledge of whether the state's evidence for the original conviction had grown too stale for a second conviction. This knowledge, coupled with the state's role as a keeper of the public trust in seeing that justice is done, places the state, vis-a-vis the habeas court, in a different position from other parties vis-a-vis a trial court. The habeas court could take these factors into account in deciding whether to accept a conclusory stipulation. The state impliedly agreed with the defendant that he did not knowingly waive rights that would otherwise be appropriate for review by a direct appeal, and the court was entitled to rely on that agreement because of the special status of the state and because § 52-470 (a) contemplates a summary proceeding.

## II

## THE APPEAL

The defendant claims that the trial court's failure to inquire of him about a possible conflict of interest of his trial counsel violated his constitutional right to conflict free representation. Although this claim appears to be more appropriate for a habeas proceeding because the constitutional right at issue deals with the trial counsel's ability to represent his client effectively; see *State* v. *Leecan*, 198 Conn. 517, 541, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986);

it may be pursued on direct appeal because the defendant is challenging the actions of the trial court, not the actions of his counsel. The defendant alleges that an omission of the trial court deprived him of a fair trial and violated a constitutional right.

The United States and Connecticut constitutions have afforded individuals certain minimum rights in criminal proceedings. The trial court safeguards these rights and ensures that none is violated during a criminal prosecution. *State* v. *Brown*, 235 Conn. 502, 527, 668 A.2d 1288 (1995). "The trial judge plays a crucial role in ensuring that a criminal defendant receives a fair trial by an impartial jury, and must be ever vigilant, throughout the course of the trial. . . . In a criminal trial, the judge is more than a mere moderator of the proceedings. It is [the judge's] responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding. *State* v. *Echols*, 170 Conn. 11, 13, 364 A.2d 225 (1975). . . . *State* v. *Brigandi*, [186 Conn. 521, 542, 442 A.2d 927 (1982)]. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown*, supra, 235 Conn. 527. As an appellate body, we are responsible for reviewing claims arising from the trial court's acts or omissions that violate constitutional rights and affect the trial proceedings itself.

The sixth amendment to the United States constitution,[10] as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution[11] guarantee a defendant the right to effective assistance of counsel in a criminal proceeding.

---

[10] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

[11] Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ."

*Powell* v. *Alabama*, 287 U.S. 45, 69, 53 S. Ct. 55, 77 L. Ed. 2d 158 (1932); *State* v. *Mason*, 186 Conn. 574, 577, 442 A.2d 1335 (1982). " 'Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest.' *Wood* v. *Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981)." *Festo* v. *Luckart*, 191 Conn. 622, 626–27, 469 A.2d 1181 (1983). The underlying right to conflict free representation is effective assistance of counsel. See *Phillips* v. *Warden*, 220 Conn. 112, 134, 595 A.2d 1356 (1991).

The importance of safeguarding this right led to the requirement that, under certain conditions, the trial court must explore the possibility of a conflict. *Holloway* v. *Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978); *Cuyler* v. *Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); *Festo* v. *Luckart*, supra, 191 Conn. 629. "Moreover, one of the principal safeguards of this right is the rule . . . that [a trial] court must explore the possibility of a conflict . . . when it knows or reasonably should know of a conflict . . . ." (Internal quotation marks ommitted.) *Festo* v. *Luckart*, supra, 629; *State* v. *Martin*, 201 Conn. 74, 79, 513 A.2d 116 (1986). In order to safeguard these federal and state constitutional rights, the United States Supreme Court and Connecticut courts have placed a duty on a trial court to inquire about a possible conflict in certain circumstances. Its failure to do so can lead to a claimed violation of a constitutional right. *Wood* v. *Georgia*, 450 U.S. 261, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981); *State* v. *Martin*, supra, 78. Although rooted in the right to effective assistance of counsel, such a claim seeks to address the actions of the trial court during a criminal proceeding, not the actions of counsel.

The difference between a claim of ineffective assistance of counsel brought in a habeas proceeding and a claim involving the failure of a trial court to safeguard

a defendant's right to effective assistance of counsel when questioned in a direct appeal is that the former requires a showing to the habeas court that the defendant in fact received ineffective assistance of counsel, whereas the latter requires an appellate determination that the trial court was alerted to a possible conflict and failed to investigate it. In *State* v. *Martin*, supra, 201 Conn. 81–83, after concluding on direct appeal, that the trial court was alerted to a possible conflict by the defendant's attorney and that the trial court failed to investigate the attorney's claim, the Supreme Court ordered a new trial, but did not determine whether an actual conflict existed.

The actions of a trial court are unlike the trial strategy of counsel. The activities of counsel may not be apparent on the record but the words and rulings of a trial court are readily reviewable from the record itself. When a defendant, therefore, alleges that the trial court's failure to inquire about a possible conflict of interest led to the deprivation of a constitutional right during the criminal prosecution, the claim is proper for a direct appeal.[12]

The defendant's claim that the trial court failed to inquire about a possible conflict of interest when it was

---

[12] *State* v. *Leecan*, supra, 198 Conn. 517, suggests that if a claim of ineffective assistance of counsel arises at trial, becomes known to the defendant, and the same trial court addresses the issue at trial, the defendant or the state may raise this ineffective assistance of counsel issue on direct appeal as long as a record has been established. "It is preferable that all of the claims of ineffective assistance, those arguably supported by the record as well as others requiring an evidentiary hearing, be evaluated by the same trier in the same proceedings. A defendant should not be required to await the outcome of his appeal upon other issues before pursuing his claim of incompetent counsel. If his claim is meritorious, he may often obtain relief in the trial court before his appeal on other issues can be heard, thus mooting such an appeal. An appeal by the state or the defendant from the determination of the incompetency of counsel question may also be joined with a pending appeal from the judgment of conviction, thus allowing a single resolution on appeal of all the claims of error that have been raised." Id., 541–42.

required to do so was not raised at trial and, therefore, he can prevail only by satisfying all of the conditions established by *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), one of which is that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial. He has failed to demonstrate that such is the case. *Festo* v. *Luckart*, supra, 191 Conn. 629, established a duty on the trial court to "explore the possibility of a conflict when it appoints a single attorney to represent multiple defendants and, in other cases, when it knows or reasonably should know of a conflict." The trial court here did not appoint the private attorney involved in this case to represent both persons and was not automatically required to inquire into the possibility of a conflict.

The defendant must show that the trial court, on the basis of the facts available to it, should have known that a possible conflict existed before a duty of inquiry would arise. "In the context of representation of multiple codefendants by one attorney, we have defined a conflict of interest as existing where the attorney adduces evidence or advances arguments on behalf of one defendant that are damaging to the interests of the other defendant. See *Festo* v. *Luckart*, [supra, 191 Conn. 631]." *Phillips* v. *Warden*, supra, 220 Conn. 135–36. The defendant does not argue and the record does not show that evidence existed that implicated one defendant and exculpated the other, that motions to sever the trial or for a mistrial were made that would alert the trial court to a possible conflict, that a plea bargain offered to one defendant was conditioned on that defendant's testifying against the other, that trial counsel emphasized to the jury that certain evidence implicated only one defendant and not the other, that one defendant's role was subordinate to the other's, or that a defense for one defendant would have implicated the other. The record does not indicate the existence of any of those

circumstances that would have alerted the trial court to a possible conflict of interest.

The defendant argues that his counsel did not adduce evidence, when Bell testified, that would have alerted the jury as to why the case against Bell was taken from its consideration. The test of a possibility of a conflict of interest is whether Bell and the defendant had adverse interests. *State* v. *Martin*, supra, 201 Conn. 81. Bell testified for the defendant, and they had no discernable adverse interest at the time.

The defendant also argues that once the charges had been nolled against Bell, the trial court should have been alerted to a possible conflict because Bell's and the defendant's interests diverged at that point and because counsel acquiesced in the trial court's decision not to inform the jury of the disposition of Bell's case. The defendant essentially argues that had the defendant's attorney moved for a judgment of acquittal for Bell before Bell testified as a witness, this information would have bolstered Bell's credibility because the jury would know that Bell had not entered into a plea bargain and had not pleaded guilty. Assumptions do not create a conflict of interest. Furthermore, the jury had been told not to speculate about the absence of Bell as a defendant. Even if the jury disregarded the court's admonition, the jury could as easily have believed that Bell's case was dropped because he had no involvement in the crime, which might have helped the defendant.

The defendant is attempting to place himself in a better position than he would have been in had he and Bell been represented by separate counsel. If the defendant were represented by separate counsel, that counsel would have been unable to alter the state's agreement with Bell. Here, the defendant's attorney did not inform the trial court of any potential conflict of

interest, and the facts imposed no duty on the trial court to inquire of the defendant about the alleged conflict.

The defendant next argues that the trial court denied him a fair trial and due process under the fifth, sixth and fourteenth amendments to the United States constitution and under article first, § 8, of the Connecticut constitution because it failed to declare sua sponte a mistrial. Because the defendant failed to raise this claim at trial, he can prevail only by satisfying all of the conditions established by *State* v. *Golding*, supra, 213 Conn. 239–40. "In the absence of any one of [the four *Golding* requirements], the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." Id., 240.

The defendant has failed to show that a constitutional violation clearly exists, as required by the third prong of *Golding*. Id., 239–40. The defendant argues that because the disposition of the codefendant's case was not explained to the jury and the alleged conflict of interest in the joint representation should have alerted the trial court that the defendant would not receive a fair trial, and therefore, the trial court should have ordered a mistrial, sua sponte.

"The decision as to whether to grant a motion for a mistrial, or to grant a mistrial on the court's own motion, is one that requires the trial court to exercise its judicial discretion. See *State* v. *Maldonado*, 193 Conn. 350, 356, 478 A.2d 581 (1984). [T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion . . . there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion . . . . *Gori* v. *United States*, 367 U.S. 364, 368–69, 81 S. Ct. 1523, 6 L. Ed. 2d 901 (1961)." (Internal quotation marks omitted.) *State* v.

*Lucci,* 25 Conn. App. 334, 341, 595 A.2d 361, cert. denied, 220 Conn. 913, 597 A.2d 336 (1991). "It is axiomatic that a mistrial should be granted only if something occurs in the course of the trial that makes it apparent to the court that a party cannot have a fair trial and the whole proceedings are vitiated. *State* v. *Peary,* 176 Conn. 170, 172–73, 405 A.2d 626 (1978), cert. denied, 441 U.S. 966, 99 S. Ct. 2417, 60 L. Ed. 2d 1072 (1979)." *State* v. *Lucci,* supra, 341. On the facts of this case, there was no abuse of discretion because the court did not declare a mistrial.

The judgment of conviction is affirmed.

In this opinion the other judges concurred.